## Gibbs v. Ernst

*Samuel C. Totaro Jr.,* for plaintiffs.

*Edwin L. Scherlis,* for defendants Paul Ernst, Marsha A. Hiester and Concern Professional Services for Children and Youth.

*Stephen G. Baratta,* for defendants R. Nancy Haley, Brenda Messa and Northampton County Children and Youth Division.

SCOTT, *J.,* March 19, 1991 — Frank A. Gibbs, Jayne C. Gibbs and Michael J. Gibbs, a minor, appeal our orders of January 7 and 8, 1991, granting certain preliminary objections of the various defendants, including those in the nature of a demurrer. The cause of action in this case arises out of an alleged wrongful adoption and negligent placement of the adoptive child, Michael Gibbs.

The facts of this case are extensive and involve three principal parties: the Gibbses, Concern and Children and Youth. Frank A. Gibbs and Jayne C. Gibbs are husband and wife. They were married in 1979 and have resided since their marriage in Philadelphia, Pa. Michael J. Gibbs is the minor adopted child of the Gibbses. Michael was born on May 21, 1977. Concern Professional Services for Children and Youth is a child-placing adoption agency licensed by the Commonwealth of Pennsylvania. Concern maintains its principal place of business in Fleetwood, Pa., but also has an office for the conducting of business in Doylestown, Pa. Paul

Ernst was the executive director of Concern and Marsha A. Hiester (hereinafter Hiester) was an adoption specialist with Concern.

Northampton County Children and Youth is a agency of the Commonwealth of Pennsylvania which has as its responsibilities the placement of children who are wards of the state with adoption agencies for the purpose of subsequently placing the children with suitable adoptive parents. R. Nancy Haley was the executive director of Children and Youth and Brenda Messa was a caseworker for Children and Youth.

The alleged facts of the case as set forth in the complaint are as follows: In 1983, the Gibbses contacted Concern regarding the availability of a healthy Caucasian infant for adoption. Upon learning that there was a waiting list for Caucasian infants, the Gibbs decided to submit a dual application, for an infant and secondarily for a "hard to adopt due to age" child. In 1984, the Gibbses were informed by Hiester of the availability of Michael, a 5-year-old Caucasian child residing in Northampton County. In October 1984, the Gibbses met with Messa at her office in Easton, Pa. Certain medical records of Michael and his biological parents were given to the Gibbses by both Concern and Children and Youth. In October 1985 the adoption was finalized by the Berks County Court of Common Pleas.

During the summer of 1986, shortly after the adoption became final, Michael began to act out in a violent and aggressive manner toward other children. Michael's behavior continued to deteriorate. From early 1987 until late 1990, Michael was an inpatient in four different facilities. Michael has been diagnosed as schizophrenic and as undersocialized aggressive, and his prognosis is guarded due to his severe anger, vengeance, and extreme self-

justification. In September 1989, a caseworker with Human Services in Philadelphia told the Gibbses that Michael had been physically and sexually abused by his biological parents.

In April 1990, the Gibbses filed a civil action in the Bucks County Court of Common Pleas. The complaint sets forth in count I (wrongful adoption) that defendants had information regarding Michael's background and the mental and physical health of both Michael and his biological parents. The Gibbses further assert that defendants misstated and misrepresented the truth about Michael in a deliberate attempt to deceive them.

In count II (negligent placement of adoptive child) the Gibbses assert that defendants breached their duty both to the Gibbses and to Michael by their failure to disclose all of the relevant information in their possession regarding Michael.

Count III is for the intentional infliction of mental distress, and in this count, the Gibbses assert that the intentional failure to disclose all relevant information about Michael was extreme and outrageous.

Finally, in count IV, for punitive damages, the Gibbses assert that the conduct of defendants was so outrageous as to justify the award of punitive damages.

The order of January 7, 1991 granted certain preliminary objections of defendants Ernst, Hiester and Concern. The preliminary objections granted included a demurrer to count I, wrongful adoption; demurrer to count II, negligent placement of adoptive child; and a motion to strike count IV, punitive damages. Our order of January 8, 1991 granted certain preliminary objections of defendants Messa, Haley and Children and Youth. The preliminary objections of Children and Youth granted include a demurrer to count I, wrongful adoption; a demurrer

to count II, negligent placement of adoptive child; and a motion to strike count IV, punitive damages. In the same order we denied certain of the preliminary objections of defendants Children and Youth. They include: (1) change of venue; (2) motion to strike paragraph 74 of the complaint (intentional infliction of emotional distress); and (3) motion for more specific pleading. Children and Youth have now filed a cross-appeal appealing our denial of their preliminary objections.

All defendants filed preliminary objections in the nature of demurrers and a motion to strike to counts I and II (wrongful adoption and negligent placement of adoptive child). Defendants aver in the preliminary objections that wrongful adoption and negligent placement of an adoptive child are not causes of action that have been formally recognized by the Pennsylvania courts.

The Gibbses agree that this is a case of first impression. They argue in response that while the Pennsylvania courts may not have recognized these causes of action, courts in other states are beginning to recognize such actions in situations involving adoptive children. See, for example, *Burr v. Board of County Commissioners of Stark County,* 491 N.E.2d 1101 (Ohio 1986), and *Meracle v. Children's Service Society of Wisconsin,* 437 N.W.2d 532 (Wis. 1989).

While the Gibbses and their adoptive son Michael may have undergone an ordeal we must agree, at this time, with defendants. We believe that the recognition of such causes of action is not the function of this court, a trial court. Such an issue of public policy is best left to the legislature and at present the legislature has not acted in this area.

The current Adoption Act, 23 Pa.C.S. §2101 et seq., does not impose a requirement on adoption

agencies or an intermediary that an investigation be made to ascertain or verify whether the medical and social history of the child is accurate or complete. Nor is there a requirement for full disclosure of all medical information.

All defendants filed motions to strike count IV for punitive damages. The basis of defendants' argument is that the complaint did not set forth facts sufficient to support a claim for punitive damages. Pennsylvania courts have long recognized the principles set forth in the Restatement (Second) of Torts, §908, subparagraph (2).

"Punitive damages may be awarded for conduct that is outrageous because of the defendant's evil motive or as a reckless indifference to the rights of others."

Additionally, there is ample case law to offer guidance to us in making this determination. In *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985), the Supreme Court stated:

"In Pennsylvania, the function of punitive damages is to deter . . . Punitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instances in which they are justified, are subject to strict judicial controls."

In *Smith v. Brown,* 283 Pa. Super. 116, 423 A.2d 743 (1980), the Superior Court opined that the conduct must have been done with "reckless indifference to the interests of others," or "wanton misconduct," which consists of intentionally doing an act of an unreasonable character, in disregard of a risk known to the actor or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow.

In light of this extremely high standard for the pleading of punitive damages we must agree with the

perception of defendants. For that reason we granted the preliminary objection of defendant.

With regard to the cross-appeal, the following preliminary objections of defendants were denied: (1) change of venue; (2) motion to strike paragraph 74 of the complaint; (3) motion for a more specific pleading.

On the venue issue, defendants, Children and Youth, Haley and Messa, averred that since Children and Youth is a division of the Department of Human Services of the County of Northampton, and since Northampton County is a "political subdivision" within the Commonwealth of Pennsylvania, pursuant to Rule 1006(b) of the Pennsylvania Rules of Civil Procedure an action against it can be brought in, and only in, counties designated by Rule 2103 of the Pennsylvania Rules of Civil Procedure. Children and Youth alleges that Pa.R.C.P. 2103(b) provides for venue in an action against a "political subdivision" *only* in the county in which the political subdivision is located, except when the Commonwealth of Pennsylvania is the plaintiff or when otherwise provided by an Act of Assembly. Children and Youth's prayer for relief in the preliminary objections was that the action be transferred to Northampton County.

In the memorandum, Children and Youth argues that *Township of Whitpain v. Goldenberg,* 131 Pa. Commw. 144, 569 A.2d 1002 (1990), controls the issue of venue in cases involving multiple defendants where one of the defendants is a political subdivision. In *Whitpain* the Commonwealth Court indicated that under Pa.R.C.P. 2103(b) the legislature may pre-empt this rule by "an act of the assembly" and that section 333 of the JARA Continuation Act of 1980, 42 P.S. §20043, is such an act. Section 333 reads in pertinent part:

"Actions . . . for claims against a local agency may be brought in an only in a county in which the local agency is located or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose."

The Gibbses allege that venue is clearly proper in Bucks County, since Concern maintains an office for the conducting of business in Doylestown, Bucks County, and under present case law and the Pennsylvania Rules of Civil Procedure, when there are multiple defendants venue is proper in the county where one of them is located.

The Gibbses cite Pa.R.C.P. 1006(b) and (c) for general rule that since venue is proper for Concern in Bucks, it is proper for all defendants including the political subdivision. In support, they cite *Peaceman v. Cades,* 272 Pa. Super. 568, 416 A.2d 1042 (1979), in which Superior Court determined that Pa.R.C.P. 2103 would not control and that the political subdivision could be sued in another county where there are multiple defendants.

Children and Youth argue that since *Peaceman* was decided the year before section 333 was enacted, there does not appear to be a conflict between the interpretation of Pa.R.C.P. 2103 in *Peaceman* in 1979 and *Whitpain* in 1990, and *Whitpain* controls. The difficulty with this argument is *Alter v. Pennsylvania Gas and Water Co.,* 110 Pa. Commw. 349, 532 A.2d 913 (1987), in which the Commonwealth Court cited *Peaceman* with approval seven years after section 333 was enacted.

In *Alter,* the political subdivision in Lackawanna County argued that venue was not proper in Luzerne County. The Commonwealth Court stated:

"[W]e believe that, pursuant to *Peaceman v. Cades,* 272 Pa. Super. 568, 416 A.2d 1042 (1979), the trial court did have venue. *Peaceman* held, inter

alia, that, pursuant to Pa.R.C.P. 1006(c) (providing that where there are multiple defendants, except the Commonwealth, any action can be brought where venue is authorized against any defendant) venue against a political subdivision lies not only in the county where the political subdivision is located but also in any county where other defendants are amenable to suit." *Alter, supra* at 353, 532 A.2d at 915.

Even if *Whitpain* controls, Children and Youth is not entitled to its requested relief since Berks County would also be proper. Concern did not appeal from our order denying their preliminary objections for change to Berks County. Therefore, given the positions of the parties, we believe Bucks is a proper place for venue.

Defendants aver that plaintiff's did not plead anything to support a claim for intentional infliction of mental distress. A careful reading of *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987), reveals that while the Supreme Court has not officially adopted section 46 of the Restatement (Second) of Torts it is a cause of action receiving more and more judicial attention. This court believes that plaintiffs should be afforded every opportunity to develop through discovery this cause of action and that this court should not hinder the litigation process (at this stage) by granting the preliminary objection of defendant.

Finally, defendants aver that plaintiffs (in the event that all counts are not stricken) should be required to file a more specific pleading. Pennsylvania is a fact-pleading state. Pa.R.C.P. 1019(a) requires that: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

A complaint must not only give defendant notice of what plaintiff's claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim. *Smith v. Brown,* 283 Pa. Super. 116, 423 A.2d 743 (1980).

In light of this rule we must disagree with defendants. The lengthy complaint filed by plaintiffs contains sufficient facts plead in a satisfactory manner. Nothing else is required.