BURR ET AL., APPELLEES, *v.* BOARD OF COUNTY COMMISSIONERS OF
STARK COUNTY ET AL., APPELLANTS.

[Cite as Burr *v.* Stark Cty. Bd. of Commrs. (1986), 23 Ohio St. 3d 69.]

(No. 85-786—Decided April 11, 1986.)

*Kenneth J. Cardinal* and *Wylan W. Witte,* for appellees.

*Robert Horowitz,* prosecuting attorney, and *Lemuel R. Green,* for appellants.

CELEBREZZE, C.J.

I

We initially determine whether the court of common pleas possessed subject matter jurisdiction over this action. Appellants contend that the Court of Claims has exclusive jurisdiction over damage claims by adoptive parents asserted against a board of county commissioners and the county welfare department.

Appellants also claim that the trial court erroneously excluded certain evidence which tended to establish state statutory oversight and funding of the county welfare department.[2]

We disagree with both contentions. The Court of Claims has "* * * exclusive original jurisdiction of all civil actions against the *state* * * *." (Emphasis added.) R.C. 2743.03(A). As such, only the "state" may be the original defendant in an action filed in the Court of Claims. R.C. 2743.02(E). "Counties," such as appellant, are not the "state" but rather are "political subdivisions" and accordingly fall outside both the legislature's statutory waiver of "state" immunity and the Court of Claims' jurisdiction. R.C. 2743.01(A) and (B), 2743.02(E) and 2743.03(A). See *Boggs* v. *State* (1983), 8 Ohio St. 3d 15; *Friedman* v. *Johnson* (1985), 18 Ohio St. 3d 85; *Illes* v. *State* (1983), 10 Ohio App. 3d 111.

In this case, the proffered evidence was not erroneously excluded, nor was it relevant to any justiciable issue before the trial court. Although many social programs operate under state or federal oversight and financing, they still remain local governmental operations of the political subdivision. The local agencies and county commissioners are not agents of the state absent statutory language to that effect. *Illes, supra.* Such is not the case in this action.

Accordingly, we hold that Ohio's courts of common pleas have original jurisdiction over civil actions commenced against counties and their agencies pursuant to R.C. 2305.01 and Section 4, Article IV of the Ohio Constitution.

II

Appellants next contend that appellees' claims must fail because there was no actionable breach of any duty owed to appellees. Appellants assert

---

[2] The excluded evidence included a summary of the Ohio Revised Code concerning adoptions and a Child Welfare Manual published in 1983, both released by the Ohio Department of Public Welfare.

that appellees would have adopted Patrick absent the false representations made to them. Any costs incurred in caring for Patrick were incidental expenses which all parents are obligated to incur for their children and, appellants contend, were totally unrelated to any reliance given to representations made to appellees at the time they decided to adopt.

We deem that in a civil action captioned "Complaint in Fraud * * * for Wrongful Adoption," which alleges that adoptive parents were fraudulently misled to their detriment by an adoption agency's material misrepresentations of fact concerning an infant's background and condition, the parents must prove each element of the tort of fraud.

In *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167, 169, we set forth the elements of fraud as:

" '(a)   a representation or, where there is a duty to disclose, concealment of a fact,

" '(b)   which is material to the transaction at hand,

" '(c)   made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

" '(d)   with the intent of misleading another into relying upon it,

" '(e)   justifiable reliance upon the representation or concealment, and

" '(f)   a resulting injury proximately caused by the reliance.' * * *"
*Id.* at 169, quoting *Friedland* v. *Lipman* (1980), 68 Ohio App. 2d 255 [22 O.O.3d 422], paragraph one of the syllabus.

For the reasons to follow, we find that the instant record amply supports the lower courts' decisions that fraud was demonstrated. There was evidence presented that appellants represented to appellees that the infant was a nice, big, healthy baby boy when in fact the welfare agency had test records which indicated, *inter alia,* that the child may have low intelligence and was at risk of disease. Appellants further represented that he was born at the Massillon City Hospital; the working mother was an unwed eighteen-year-old who was living with her parents, could not care for her son and voluntarily signed custody to appellants; that the grandparents were mean to the boy; and that the mother was moving to Texas for better employment.

Each of these untrue statements was found to have been affirmatively made with knowledge of its falsity. The representations were material to the adoption transaction and were obviously made with the intention of misleading the Burrs into relying upon them as fact while making their decision whether to adopt.

Both Mr. and Mrs. Burr testified that had they not been lied to regarding Patrick's history, they never would have adopted him.[3] Hence, had

---

[3] During direct examination Mr. Burr testified as follows:
"Q.   From what you were able to determine from those adoption records and from what

they not relied on the representations, their subsequent damages would never have resulted. In short, appellants knew the history was false, intended reliance, and in fact misled the Burrs to their detriment.

Lastly, we find appellees' reliance was justifiable in this case and that their injuries resulted therefrom. As this court noted in *Cohen, supra,* at 169-170: " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " (Quoting from *C.E. Morris Co.* v. *Foley Construction Co.* [1978], 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus.) See, also, *Frankenmuth Mut. Ins. Co.* v. *Selz* (1983), 6 Ohio St. 3d 169, 172.

It has long been the rule in our state that "[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom." *Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164, at 166. See *Molnar* v. *Beriswell* (1930), 122 Ohio St. 348, paragraph one of the syllabus; *Bartges* v. *O'Neil* (1861), 13 Ohio St. 72, 77-78; *Bartholomew* v. *Bentley* (1846), 15 Ohio 659.

In this regard, we set forth the origin of this rule of law in *Wells* v. *Cook* (1865), 16 Ohio St. 67, 69, as follows:

---

you know now that was in those adoption records, would you tell this Jury whether or not you would have adopted Patrick?

"MR. HESS: Object.

"MR. CARDINAL: This is a fraud case, your Honor, and I think that he can testify as to whether or not he would have done something if he had known this set of facts.

"THE COURT: Well, overruled. I'll overrule the objection.

"A. If I had been handed the true facts and been given a right to make up my mind, 'cause all the woman would have had to said to me was that the parents was in Massillon State Hospital and I would have never never seen this child.

"Q. Why?

"A. There is no way I can take care of this child. My wife's already crippled to start with. Am I going to take on another responsibility that I do not have right or the money and stuff to take care of this child? I can't handle a child like this. There's no way I would have seen him.

"Q. Did you rely on the statements of * * * [the county agent] when you adopted this child?

"A. I put my total trust and confidence in everything that the woman said. I didn't know that there was going to be a little child lead up to my door with his medical records held back so that I couldn't doctor him."

Mrs. Burr testified similarly during examination:

"Q. Had you known what was in those exhibits today, #1 through #30, which is now the evidence, would you have adopted Patick?

"MR. HESS: Object.

"THE COURT: Overruled.

"A. I couldn't have. I wouldn't have went to see the child because I'm a cripple myself. I'm very handicapped. And I wouldn't have felt that I might have had the strength to deal with what might've come up, knowing that he was the child of two mental patients."

"Lord Campbell, in *Gerhard* v. *Bates,* 20 E. L. & E. R. 136, lays down the rule thus: 'If A fraudulently makes a representation which is false, and which he knew to be false, to B, meaning that B shall act upon it, and B, believing it to be true, does act upon it, and thereby suffers a damage, B may maintain an action on the case for deceit.' "

In *Bartholomew, supra,* at 666-667, we clarified the basic purpose behind compensating parties for the consequences of fraud:

"It may be regarded as a well-settled principle, that for every fraud or deceit which results in consequential damage to a party, he may maintain a special action on the case; *Upton* v. *Vail,* 6 Johns. 182. The principle is one of natural justice, long recognized in the law; *Barney* v. *Dewy,* 13 Johns. 236. And it matters not, so far as the right of action is concerned, whether the means of accomplishing the deception be complex or simple — a deep-laid scheme of swindling or a direct falsehood — a combined effort of a number of associates or the sole effort of a solitary individual — provided the deception be effected and the damage complained of be the consequence of the deception. A valid act * * * is alike powerless to secure the guilty from the consequences of their fraudulent conduct, where it has been knowingly resorted to as the mere means of chicane and imposition, and used to facilitate the work of deception and injury. Were it otherwise, it would be a reproach to the law. * * * Neither a good nor a bad thing may be falsely used for purposes of deception and made a scapegoat for responsibility. * * *"

If the true facts regarding this child's background and condition at the time of adoption did not present a foreseeable risk of disease of the mind and body, appellants would not have had to engage in their complex scheme of deception. It would be a travesty of justice and a distortion of the truth to conclude that deceitful placement of this infant, known by appellants to be at risk, was not actionable when the tragic but hidden realities of the child's infirmities finally came to light.

As a public agency charged with the legal duty and authority to arrange adoptions, these governing principles of justice set forth in the above authorities require that appellants be held accountable for injuries resulting from the deceitful and material misrepresentations which we find were foreseeably and justifiably relied on by appellees.

## III

Appellants further contend they are immune from this suit because R.C. 5153.16 provides the exclusive remedy for adoptive parents to obtain expense money for "special needs" children. Contrary to appellants' assertion, we find that R.C. 5153.16(N) is inapplicable because it pertains to the *knowing* placement of children with special needs in a situation where the parties "[e]nter into agreements before adoption to make payments * * * [for] special needs."[4]

---

[4] R.C. 5153.16(N)(3) states that a " 'child with special needs' means a child or sibling

Our conclusion is bolstered by the legislature's express mandate that "[n]o board or county department shall place or maintain a child with special needs * * * in a setting other than with a person seeking to adopt the child * * *." R.C. 5153.16(N)(2). In this regard, Ohio law contemplates (with certain exceptions not present herein) that persons who wish to adopt a child with special needs must be approved ·and placed on a separate list maintained by the county agency. R.C. 5103.152(C).

The legislature's purpose in enacting R.C. 5153.16 was *not* to provide statutory immunity for the commission of fraud. We believe it is cruel to suggest the Burrs waived their only legal recourse for payments since it was appellants who placed the child without informing· the adoptive parents of his special needs.

### IV

We next consider appellants' contention that appellees' action is barred by the statute of limitations since they were first aware of some of Patrick's problems as early as 1969. Again, we conclude that appellants' proposition is without merit. R.C. 2305.09 provides in relevant part that:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(C)  For relief on the ground of fraud;

"* * *

"* * * the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, *until the fraud is discovered.*" (Emphasis added.)

Hence, a cause of action for the tort of fraud must be brought within four years of the time the cause accrued. The cause does not accrue until the fraud and wrongdoer are actually discovered. See *Kettering* v. *Berger* (1982), 4 Ohio App. 3d 254, 261.

As applied to this case, the Burrs first learned of appellants' false representations in November 1982, when the probate court ordered the records opened for purposes of Patrick's medical diagnosis and treatment. This action, commenced just over four months later, was therefore timely.

### V

Appellants next assert that it was their policy at the time of the Burrs' adoption in 1964 not to share personal history of the children with adoptive parents. Appellants argue it is exactly this type of policy decision which is protected by the doctrine of sovereign immunity.

We find that sovereign immunity does not preclude this cause of action. The suit is premised not on injuries resulting from appellants' official

---

group that is difficult to place because of age, race, physical handicaps, mental or emotional conditions, or for other characteristics, and is or in all probability would become dependent upon the resources of the state, county, or sources other than adoptive parents."

policy of silence, but rather on appellants' active and knowing misrepresentation of fact. As this court noted in *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, syllabus; "* * * a county will be held liable * * * for the negligence of its employees and agents in the performance of their activities." See, also, *Adams* v. *Peoples* (1985), 18 Ohio St. 3d 140.

Congruously, we conclude in this case that the doctrine of sovereign immunity does not shield a political subdivision from responsibility for the fraudulent acts and misrepresentations of its employees and agents made in the performance of their activities.

Lastly, appellants challenge the judgment and damages awarded by the trial court. Appellants essentially claim the judgment is against the weight of the evidence and that the jury award is unreasonably based on sympathy, speculation or prejudice.

We find that the judgment and award ($125,000) were appropriate in light of the evidence presented to the jury, medical bills ($81,000), other expenses, and appellees' claimed emotional damage. Specifically, the jury's first interrogatory response did agree with appellants' averment that nondisclosure was agency policy. However, the jury's response to the second interrogatory, taken together with the record and general verdict, supports the conclusion of the trier of fact that the agency did not follow its policy of silence but rather engaged in active fraudulent misrepresentations of fact relied on by the Burrs to their detriment.[5]

It is well-established that " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Cohen, supra,* at 169-170. In this case, there is competent and credible evidence supporting the judgment, and appellants have presented no compelling reason to this court which would justify reversal. *Id.* Additionally, the award appears commensurate with the injuries inflicted and is not so excessive as to be set aside. *Carter* v. *Simpson* (1984), 16 Ohio App. 3d 420, 423; *Toledo, C. & O. River Rd. Co.* v. *Miller* (1923), 108 Ohio St. 388, paragraph three of the syllabus.

## VI

We believe it appropriate to comment briefly concerning the breadth of today's decision. In no way do we imply that adoption agencies are guarantors of their placements. Such a view would be tantamount to imposing an untenable contract of insurance that each child adopted would mature to be healthy and happy. Such matters are solely in the hands of a

---

[5] The following interrogatories were both answered by the jury in the affirmative:

"At the time of Patrick's adoption, was it the policy of the adoption division of the Stark County Welfare Department not to disclose to adoptive parents the family history of children being adopted?"

"Did the fact that the defendants did not advise the plaintiffs of the place of Patrick's conception constitute fraud?"

higher authority. Adoptive parents are in the same position as, and confront risks comparable to those, of natural parents relative to their child's future. Our decision should not be viewed as altering traditional family relationships and responsibilities, nor should it be read as shifting part of the burden of parenting to society. However, just as couples must weigh the risks of becoming natural parents, taking into consideration a host of factors, so too should adoptive parents be allowed to make their decision in an intelligent manner. It is not the mere failure to disclose the risks inherent in this child's background which we hold to be actionable. Rather, it is the deliberate act of misinforming this couple which deprived them of their right to make a sound parenting decision and which led to the compensable injuries. Further, we intend that our decision will have no adverse effect on Ohio's many fine adoption programs. It is the rare and fraudulent abuse of this station in society which we address.

Based on all the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

LOCHER, J., concurs in judgment only.

HOLMES and WRIGHT, JJ., dissent.