**M.H. and J.L.H., Respondents (CX–91–406), Appellants (C9–91–672),**

**v.**

**CARITAS FAMILY SERVICES, Appellant (CX–91–406), Respondent (C9–91–672).**

**Nos. CX–91–406, C9–91–672.**

Court of Appeals of Minnesota.

Sept. 10, 1991.

Review Granted Nov. 13, 1991.

Kay Nord Hunt, Stacey A. DeKalb, Raul Gasterazoro, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for M.H. and J.L.H.

Gordon H. Hansmeier, David K. Ryden, Donohue Rajkowski, Ltd., St. Cloud, for Caritas Family Services.

Considered and decided by CRIPPEN, P.J., and NORTON, and LOMMEN *, JJ.

## OPINION

CRIPPEN, Judge.

■ The trial court certified for our review the question whether public policy precludes a cause of action of respondents M.H. and J.L.H. against an adoption agency for negligent misrepresentations made during the placement of a child in adoption proceedings. Accordingly, Caritas Family Services appeals the trial court decision denying summary judgment on the claim.[1] M.H. and J.L.H. also seek review of the trial court's summary judgment for Caritas on their intentional misrepresentation claim, and its refusal to allow amendment of the complaint to assert claims for intentional and negligent infliction of emotional distress and punitive damages.[2]

## FACTS

Respondents contacted Caritas Family Services in 1980 to pursue an adoption. Late in 1981, Caritas contacted respondents about the availability of a child for adoption. In the initial phone conversation Sister Cathan Culhane told J.L.H. that there was a possibility of incest in the family of the child. When the couple went to meet the child, Sister Culhane asked M.H. if it mattered to him if there was incest in the family's background, to which M.H. responded no. Respondents apparently did not imagine that the incest accounted for conception of the adoptee child. Neither M.H. or J.L.H., however, made any further inquiries as to when specifically, incest had

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. Ordinarily orders denying summary judgment are not appealable, see Minn.R.Civ.App.P. 103.-03. In this case the certified question permits appeal. Minn.R.Civ.App.P. 103.03(h) (appeal may be taken from an order denying summary judgment where the trial court certifies the question as important and doubtful).

2. These issues were not raised through notice of review but in a separate appeal consolidated with Caritas' appeal proceedings. Notwithstanding their status as appellants in these separate proceedings, we will continue to denominate M.H. and J.L.H. as respondents in this opinion.

occurred in the child's background and appellant offered no further information. The only written information given to respondents before the adoption did not mention incest. This writing also described the natural father as being in "good health" and of "normal intelligence."

Respondents quickly observed that the baby, C.M.H., was jumpy and nervous. Respondents continue to have problems with C.M.H., who has a violent nature and has set fire to furniture in their home. The child has been diagnosed as suffering from attention deficit hyperactivity disorder, for which he takes Ritalin and receives counseling.

Caritas knew at the time of the adoption that C.M.H.'s natural parents were siblings. Respondents did not learn this until December 4, 1987, during the adoption process for a second child. Respondents also learned the birth father was considered borderline hyperactive, of low average intelligence, and had received counseling at a mental health center when he was eleven.

Respondents sued Caritas for negligent and intentional misrepresentation. They also sought to amend their complaint to add claims for negligent and intentional infliction of emotional distress and punitive damages. The trial court granted summary judgment on the intentional misrepresentation claim, concluding that respondents' reliance on Caritas' representations about the incest was unreasonable as a matter of law. The court also denied respondents' motion to amend, finding that none of the proposed claims could survive summary judgment. The trial court denied summary judgment on the negligent misrepresentation claim, and certified the question whether such a claim against an adoption agency offends public policy.

## ISSUES

1. Does a negligent misrepresentation claim against an adoption agency offend public policy?

2. Are there fact issues precluding summary judgment on respondents' intentional misrepresentation claim?

3. Are there fact issues precluding summary judgment and justifying amendment of pleadings for respondents' intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages claims?

## ANALYSIS

On review of summary judgment decisions, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

*1. Negligent Misrepresentation.*

■ Appellant Caritas Family Services argues that this court should follow decisions in California and Ohio and disallow respondents' claim for negligent misrepresentation on public policy grounds. *See Richard P. v. Vista Del Mar Child Care Service*, 106 Cal.App.3d 860, 866–67, 165 Cal.Rptr. 370, 373–74 (1980) (refusing to recognize on public policy grounds a cause of action for negligent misrepresentation against an adoption agency for statements made about an adopted child's health); *Burr v. Board of County Comm'rs*, 23 Ohio St.3d 69, 78, 491 N.E.2d 1101, 1109 (1986) (holding deliberate misinforming of adoptive parents actionable, but not mere failure to disclose child's background).

Respondents argue that this claim does not offend public policy. They rely on a Wisconsin case recognizing such a cause of action, *Meracle v. Children's Serv. Soc'y*, 149 Wis.2d 19, 32–33, 437 N.W.2d 532, 537 (1989), and a Minnesota case recognizing a cause of action for negligent misrepresentation against government officers and employees, *Northernaire Productions, Inc. v. County of Crow Wing*, 309 Minn. 386, 390, 244 N.W.2d 279, 282 (1976). We agree with the reasoning in the cases cited by respondents and conclude that public policy does not preclude a negligent misrepresentation action against an adoption agency.

In *Meracle*, an adoption agency informed adoptive parents that their child was not at risk for Huntington's disease because her

natural father had been free of it, despite the fact that her paternal grandmother had the disease. *Meracle*, 149 Wis.2d at 23, 437 N.W.2d at 533. The parents sued for negligent misrepresentation and sought damages for future medical expenses and emotional distress. *Id.* at 24, 437 N.W.2d at 533. The court disagreed with California and Ohio decisions refusing to recognize the cause of action, and stated that under the circumstances of the case, the cause of action did not offend public policy:

> We feel it necessary to emphasize the uniqueness of this case. This is not a case in which an adoption agency placed a child without discovering and informing the prospective parents about the child's health problems. Therefore we need not and do not address the question of whether adoption agencies have a duty to discover and disclose health information about children they place for adoption.
>
> \* \* \* \* \* \*
>
> To avoid liability, agencies simply must refrain from making affirmative misrepresentations about a child's health. We do not hold that agencies have any duty to disclose health information. Further, our decision will not inhibit adoption. Indeed, it will give potential parents more confidence in the adoption process and in the accuracy of the information they receive. Such confidence would be eroded if we were to immunize agencies from liability for false statements made during the adoption process.

*Meracle*, 149 Wis.2d at 32–33, 437 N.W.2d at 537.

■■■ The cause of action is thus limited to those situations where the agency assumes a duty to inform prospective parents about the child's health or the health of the natural parents. The adoptive parents may recover only those extraordinary expenses incurred as a result of the misrepresentation, not all the ordinary expenses of raising a child. *See id.* at 33, 437 N.W.2d at 537.

Our choice to follow the Wisconsin precedent is shaped by a Minnesota Supreme Court decision in an analgous case. In *Northernaire*, the court recognized a cause of action in negligent misrepresentation against government officers, concluding that public policy actually favors such a claim. *Northernaire*, 309 Minn. at 390, 244 N.W.2d at 282. The court stated:

> We will continue to allow a cause of action against government officers and employees for negligent misrepresentation of fact because other public policy considerations are more compelling in that context. Members of the public have no other access to factual information maintained by the government except through government officers and employees. Therefore, the policy of promoting accuracy through the prospect of tort liability outweighs the possibility of inhibiting performance of duties of office or employment.

*Id.*

■■ Similar policy considerations exist here. The only channel of information about the adopted child is the adoption agency. A tort cause of action limited in the fashion the Wisconsin Supreme Court has set out in *Meracle* would promote accuracy when agencies attempt to communicate health information, and would not inhibit the agency's performance.[3] To renounce such liability may actually inhibit adoptions because prospective parents would be warier of the process if the agency had no disincentive to make false statements.[4]

---

**3.** Caritas contends for the first time on appeal that summary judgment was appropriate on both misrepresentation claims because respondents failed to put forth any expert evidence that C.M.H.'s hyperactivity was genetically caused, and therefore did not make out a prima facie case. Because Caritas did not include this argument in its motion for summary judgment, respondents did not have notice that they should oppose the summary judgment on this ground. We therefore decline to reach the issue here. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (party seeking summary judgment has burden to inform trial court of the basis for its motion).

**4.** We do not find persuasive the California and Ohio cases refusing to recognize this tort. In *Richard P.*, the California court concluded only that "to impose liability in a case such as this

## 2. *Intentional Misrepresentation.*

The trial court granted appellant's motion for summary judgment on respondents' intentional misrepresentation claim, concluding that there had been no "affirmative transmission of a representation"; and even if there was, respondents' reliance was unreasonable as a matter of law because they made no further inquiries into the circumstances surrounding the incest after it was disclosed to them.

■ To establish an intentional misrepresentation claim, the plaintiff must show:

(1) There was a representation.

(2) That representation was false.

(3) The representation had to do with a past or present fact.

(4) That fact was material.

(5) That fact was susceptible of knowledge.

(6) The representer knew the represented fact to be false or, in the alternative, asserted it as his own knowledge without knowing whether it was true or false.

(7) The representer intended to have the other person induced to act or justified in acting upon it.

(8) That person was so induced to act or so justified in acting.

(9) That person's action was in reliance upon the representation.

(10) That person suffered damage.

(11) That damage was attributable to the misrepresentation.

*Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 202–03, 175 N.W.2d 184, 187 (1970).

■ First, it is important to note that respondents are suing over two separate representations: (1) the representation about incest in C.M.H.'s family; and (2) the representation that the natural father was in good health and of average intelligence.

With respect to communications about the natural father, the trial court erred in concluding there was no representation.

■ As to the communications about the possibility of incest, the trial court also erred. Nondisclosure of material facts may constitute a misrepresentation where the parties are in a confidential or fiduciary relationship, or where one party "has special knowledge of material facts to which the other party does not have access." *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn.1989) (quotation omitted). Such is the case here.

■ The trial court also concluded that respondents' reliance was unreasonable because they made no inquiries about the incest. We find no basis for placing such a burden of inquiry on respondents as a matter of law, and conclude that the reasonableness of respondents' behavior is a question of fact they are entitled to have put before a jury. We therefore reverse the trial court's summary judgment on the intentional misrepresentation claim.

## 3. *Amendments to Pleadings.*

■ The trial court denied respondents' motion to amend their complaint to add claims for negligent and intentional infliction of emotional distress and punitive damages. The decision whether to allow amendments rests in the discretion of the trial court and will be reversed only for an abuse of that discretion. *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn.1980). Leave to amend is to be liberally granted under Minn.R.Civ.P. 15.01, but amendment is properly denied where the claims could not survive summary judgment. *Hunt v. University of Minnesota*, 465 N.W.2d 88, 95 (Minn.App.1991).

■ The trial court did not abuse its discretion in concluding that appellant's

---

would in effect make the adoption agency a guarantor of the infant's future good health." *Richard P.*, 106 Cal.App.3d at 867, 165 Cal.Rptr. at 374. The tort we recognize today, however, is not similar to products liability or contractual warranties. The agency merely must use reasonable care to ensure that the information it communicates is true, and the adoptive parents

must show that any negligently communicated falsity is causally related to their damages. In *Burr*, the Ohio court did not explain how requiring adoption agencies to use reasonable care when making representations about a child's health would inhibit adoptions. *See Burr*, 23 Ohio St.3d at 77–78, 491 N.E.2d at 1109.

conduct was not sufficiently egregious to support an intentional infliction of emotional distress claim. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–40 (Minn.1983). Furthermore, respondents did not submit any medical evidence to establish physical manifestations of their emotional distress. *See Born v. Medico Life Ins. Co.*, 428 N.W.2d 585, 590 (Minn.App. 1988), *pet. for rev. denied* (Minn. Nov. 16, 1988); *Hubbard*, 330 N.W.2d at 438 (discussing alternative premise of emotional distress accompanying physical injury).

 We conclude, however, that it was an abuse of discretion to deny leave to amend to add allegations on negligent infliction of emotional distress and punitive damages claims. A negligent infliction of emotional distress claim is properly pleaded where supported by a separately pleaded intentional tort. *See Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815, 823–24 (Minn.App.1988) (negligent infliction of emotional distress claim proper where plaintiff has suffered a direct invasion of her rights, such as defamation, malicious prosecution or other willful or wanton conduct). Proof of resulting physical injuries is not required on respondents' claim of negligent misrepresentation which constituted a direct invasion of rights. *See id.; Bohdan v. Alltool Mfg. Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987). Because we conclude that the intentional misrepresentation claim may go forward, respondents are entitled to add the negligent infliction of emotional distress claim.

 Likewise, a party may add a claim for punitive damages where supported by an intentional tort. *See* Minn.Stat. § 549.-20, subd. 1 (1990); *Utecht v. Shopko Dep't Store*, 324 N.W.2d 652, 654 (Minn.1982) (where only negligence is pleaded, amendment to add punitive damages is properly denied). Here, the punitive damages claim may be added because it is supported by the intentional misrepresentation claim.

## DECISION

We conclude that a cause of action in negligent misrepresentation against the appellant adoption agency does not offend public policy, and thus answer the certified question in the negative and remand this issue for trial. We also reverse the grant of summary judgment on the intentional misrepresentation claim, and the denial of respondents' motion to add claims for negligent infliction of emotional distress and punitive damages, and remand these issues for trial. We affirm the trial court's denial of respondents' motion to add a claim for intentional infliction of emotional distress.

Certified question answered in the negative; affirmed in part, reversed in part and remanded.