615 A.2d 851

Frank A. GIBBS, Jayne C. Gibbs and Michael
J. Gibbs, a Minor, Appellants,

v.

Paul ERNST, Marsha A. Hiester, Concern Professional Services
For Children and Youth and R. Nancy Haley, Brenda Messa,
Northampton County Children & Youth Division, Appellees.
(Four Cases)

Commonwealth Court of Pennsylvania.

Argued Dec. 18, 1991.

Decided Aug. 20, 1992.

156

Samuel C. Totaro, Jr., for appellants.

Janet W. Mason, for appellees Concern Professional Services for Children and Youth, Paul Ernst and Marsha A. Hiester.

Stephen G. Baratta, for appellees, Northampton County Children and Youth, R. Nancy Haley and Brenda Messa.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

COLINS, Judge.

This is an appeal brought by Frank A. Gibbs, Jayne C. Gibbs (hereinafter collectively referred to as the Gibbses), and Michael J. Gibbs (hereinafter referred to as Michael), from an order of the Court of Common Pleas of Bucks County (Common Pleas) granting certain preliminary objections filed by Paul Ernst (hereinafter referred to as Ernst), Marsha S. Hiester (hereinafter referred to as Hiester), Concerned Professional Services for Children and Youth (hereinafter referred to as Concerned Services) and granting certain preliminary objections filed by R. Nancy Haley (hereinafter referred to as Haley), Brenda Messa (hereinafter referred to as Messa), and Northampton County Children and Youth Division (hereinafter referred to as Northampton Youth).

The following factual background gave rise to this appeal. Concerned Services is a child-placing agency licensed by the Commonwealth of Pennsylvania, with its principal place of business in Fleetwood, Pennsylvania but also with an office in Doylestown, Pennsylvania. At all times relevant to this appeal, Ernst was Executive Director of Concerned Services and Hiester was an adoption specialist with Concerned Services. Northampton Youth is a Commonwealth of Pennsylvania agency that places children who are wards of the State with adoption agencies which, in turn, attempt to place these children with adoptive parents. At all times relevant to this appeal, Haley was Executive Director of Northampton Youth and Messa was a caseworker for Northampton Youth.

In 1983, the Gibbses, residents of Philadelphia, Pennsylvania, contacted Concerned Services about adopting a "healthy Caucasian infant." After being advised of the waiting list for Caucasian infants, the Gibbses applied to adopt either an infant or a "hard to adopt due to age child." In 1984, Hiester of Concerned Services notified the Gibbses of the availability of Michael, a five year old child living in Northampton County. Thereafter, the Gibbses met with Messa at Northampton

Youth's Easton, Pennsylvania office concerning their adoption plans. Both Concerned Services and Northampton Youth, according to the fact findings in Common Pleas' opinion, provided the Gibbses with medical records of Michael and his natural parents. In October 1985, the Court of Common Pleas of Berks County finalized the Gibbses' adoption of Michael.

After the adoption became final, in 1986, Michael manifested violent, aggressive behavior toward other children requiring that, from 1987 through 1990, he be placed as an inpatient in four different facilities, one of which was Northwestern Institute (hereinafter referred to as Northwestern) in Fort Washington, Pennsylvania. Michael was given a guarded prognosis for a condition of "schizophrenia and undersocialized aggressiveness," as well as "severe anger, vengeance, and extreme self-justification." Moreover, the Gibbses allege that in 1989, a Philadelphia Human Services caseworker informed them that Michael's Northwestern records indicated he had a history of being physically and sexually abused by his natural parents. It is alleged that upon ordering the Northwestern medical record summary, the Gibbses learned, for the first time, that: (1) Michael had been in ten placements before being classified as eligible for adoption; (2) Michael's mother, during his first six years, kept placing him in and out of foster care; (3) in addition to an extensive history of physical and sexual abuse by his biological parents, Michael was subjected to neglect; and, (4) Michael had a long history of being aggressive and hostile toward other children. It is further alleged by the Gibbses that the foregoing information was never provided to them by either Concerned Services or Northampton Youth prior to Michael's adoption.

Subsequently, in 1990, the Gibbses filed a civil action against Ernst, Hiester, and Concerned Services, and against Haley, Messa, and Northampton Youth (hereinafter collectively referred to as Defendants), by way of a complaint alleging the following: in Count I (Wrongful Adoption) that Defendants possessed information that was not disclosed concerning Michael's background, that is, his psychological and physical health, and that of his natural parents, and that Defendants

intentionally misrepresented the truth about Michael to deceive them; in Count II (Negligent Placement of Adoptive Child) that Defendants breached a duty owed to both the Gibbses and Michael by failing to disclose all pertinent information in their possession concerning Michael; in Count III (Intentional Infliction of Mental Distress) that Defendants' intentional failure to disclose all pertinent information about Michael was extreme and outrageous; and, in Count IV (Punitive Damages) that Defendants' conduct was so outrageous as to warrant awarding punitive damages.

Common Pleas, by order dated January 7, 1991, selectively granted certain of the preliminary objections to the Gibbses' complaint filed by Ernst, Hiester and Concerned Services, specifically a demurrer to Count I (Wrongful Adoption), a demurrer to Count II (Negligent Placement of Adoptive Child) and a Motion to Strike Count IV (Punitive Damages). By order dated January 8, 1991, Common Pleas granted identical preliminary objections filed by Haley, Messa and Northampton Youth but denied Northampton Youth's preliminary objections for change of venue, for a motion for a more specific pleading, and for a motion to strike the intentional infliction of emotional distress allegations of the Gibbses' complaint. Northampton Youth filed a cross appeal from Common Pleas' denial of these foregoing preliminary objections.

It is alleged by both Concerned Services and Northampton Youth, in their preliminary objections, that Wrongful Adoption and Negligent Placement of Adoptive Child are not causes of action recognized by the Pennsylvania courts. Nevertheless, the Gibbses argue that because a substantial number of other jurisdictions have acknowledged such actions, their own legal position is accordingly a viable one.

Our scope of review is limited to determining whether an abuse of discretion or error of law was committed. *Wurth v. City of Philadelphia*, 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990). In ruling on preliminary objections in the nature of a demurrer, all well pleaded facts in the complaint and all inferences reasonably deducted therefrom must

be accepted as true. *City of Philadelphia v. Buck*, 138 Pa.Commonwealth Ct. 250, 587 A.2d 875, *petition for allowance of appeal denied*, 528 Pa. 618, 596 A.2d 801 (1991). The courts will sustain a demurrer "only when it appears, with certainty, that the law permits no recovery under the allegations pleaded." *Id.* at 253, 587 A.2d at 877. Because Common Pleas' granting of certain preliminary objections in this matter will substantially preclude the Gibbses from fully pursuing their claim, we would affirm Common Pleas only if all issues raised, and the possibility of recovery thereon, are clear and free of doubt. Our review of the record indicates otherwise.

Addressing Counts I and II of the Gibbses' complaint, we concede that Pennsylvania law does not specifically provide for causes of action identified as Wrongful Adoption and Negligent Placement of Adoptive Child. Nevertheless, agencies such as Concerned Services and Northampton Youth, with legal authority to arrange and facilitate adoptions, are professional entities with an uncompromising duty to maintain integrity in dealing with all prospective adoptees and adoptive parents. Therefore, we must adopt the rationale of the Ohio Supreme Court and hold that such agencies should be held accountable for any material misrepresentations, either by failing to disclose or by affirmatively misrepresenting to prospective adoptive parents, information regarding the prospective adoptee. *Burr v. Board of Commissioners of Stark County*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986). In the present case, the Gibbses have raised sufficient allegations of fraudulent misrepresentation by Concerned Services and Northampton Youth, as to warrant granting them an opportunity to prove their case before the trier of fact.

In reaching this decision without the benefit of a precedential body of Pennsylvania statutory or case law, we have, by analogy, examined the following recent cases from three other states that have acknowledged and considered adoptive parents' claims against adoption agencies for alleged fraud and misrepresentation: *Meracle v. Children's Service Society of Wisconsin*, 149 Wis.2d 19, 437 N.W.2d 532 (1989); *Michael J.*

*v. County of Los Angeles, Department of Adoptions,* 201 Cal.App.3d 859, 247 Cal.Rptr. 504 (1988); and *Burr.*

In *Meracle,* adoptive parents instituted an action for negligent misrepresentation and infliction of emotional distress against an adoption agency whose social worker had assured them that although the potential adoptee's paternal grandmother had died of Huntington's disease (a genetically transmitted degenerative brain disease), the child's natural father tested negative for the disease and thus the adoptee was no more at risk than any other child for developing the disease. The *Meracle* court held that because the social worker voluntarily assumed the duty of informing the adoptive parents about Huntington's disease and the adoptee's chances of contracting it, the parents' cause of action was not barred by the public policy exempting adoption agencies from any affirmative duty to disclose health information.

A similar rationale was applied by the court in *Michael J.,* where adoptive parents and an adoptee commenced an action for fraud and negligence against the Los Angeles Department of Adoptions for failing to ascertain adoptee's medical condition (Sturge–Weber Syndrome, a congenital degenerative nerve disorder subjecting adoptee to seizures) and for misrepresenting the adoptee as being healthy. In recognizing an action for fraudulent concealment and/or intentional misrepresentation, the *Michael J.* court stated:

We join in the view that an adoption agency cannot be made the guarantor of an infant's future good health and should not be liable for mere negligence in providing information regarding the health of a prospective adoptee. But here the evidence raised a triable issue of fact regarding the failure to disclose a material fact within the agency's possession that the examining physician would not render a prognosis for Michael. The significance of that fact at the very least suggests that the nondisclosure was fraudulent.

. . . . .

By recognizing an action for intentional misrepresentation or fraudulent concealment, we are not imposing on the agency a duty to predict the future health of a prospective

adoptee. However, there must be a good faith full disclosure of material facts concerning existing or past conditions of the child's health.... Public policy cannot extend to condone concealment or intentional misrepresentation which misleads prospective adoptive parents about the unusual calamity they are assuming.

*Michael J.*, 201 Cal.App.3d at 874–75, 247 Cal.Rptr. at 513.

Similarly, in *Burr*, where adoptive parents brought an action for "wrongful adoption" against the Stark County Board of Commissioners because of material misrepresentations made by a county social worker concerning an adoptee's health and parentage, upon which misrepresentations adoptive parents relied to their detriment, the court held the county responsible "for injuries resulting from the deceitful and material misrepresentations which we find were foreseeably and justifiably relied on by appellees." *Burr*, 23 Ohio St.3d at 75, 491 N.E.2d at 1107.

Unarguably, the *Meracle, Michael J.*, and *Burr* decisions are highly relevant to the outcome of the present case, in encouraging a policy of ensuring that adoptive parents, as do prospective natural parents, have an opportunity to make an intelligent, informed decision before assuming the burden of parental responsibility. In this respect, "[n]ondisclosure of material facts may constitute a misrepresentation where the parties are in a confidential or fiduciary relationship, or where one party 'has special knowledge of material facts to which the other party does not have access.'" *M.H. and J.L.H. v. Caritas Family Services*, 475 N.W.2d 94, 99 (Minn.Ct.App. 1991) (quoting *L & H Airco, Inc. v. Rapistan Corporation*, 446 N.W.2d 372, 380 (Minn.1989) (quotation omitted)). This is clearly applicable to the Gibbses' total reliance upon the incomplete information, both through medical records and verbal representations, provided to them by Concerned Services and Northampton Youth. The Gibbses, moreover, testified that, had they known in advance of Michael's extensive history of abuse by his natural parents and of his established pattern of behavioral problems, they would not have adopted him.

In view of the foregoing considerations, we reverse Common Pleas' grant of the preliminary objections in order to allow the Gibbses to proceed with what, in essence, are allegations of fraud and misrepresentation (although termed "wrongful adoption" and "negligent placement of adoptive child") in their complaint. We further affirm Common Pleas in denying Northampton Youth's preliminary objections for change of venue, for a more specific pleading, and for eliminating the complaint's allegations of intentional infliction of emotional distress.

■ As to the change of venue issue, Northampton Youth in its cross appeal argues that, pursuant to *Township of Whitpain v. Goldenberg,* 131 Pa.Commonwealth Ct. 144, 569 A.2d 1002, *petition for allowance of appeal denied, Goldenberg v. Chrysler Motor Corporation,* 525 Pa. 660, 582 A.2d 326 (1990), where there are several defendants, one of which is a political subdivision, e.g., a local agency, an action for any claim against this local agency may be instituted only in the county where the agency is located, or where the cause of action arose. Accordingly, Northampton Youth contends that the Gibbses' action should be transferred from Bucks to its situs, Northampton County. We concur with Common Pleas' rejection of this argument on the basis of *Alter v. Pennsylvania Gas and Water Company,* 110 Pa.Commonwealth Ct. 349, 353, 532 A.2d 913, 915 (1987), *petition for allowance of appeal denied,* 521 Pa. 623, 557 A.2d 726 (1989), in which the Court stated that "venue against a political subdivision lies not only in the county where the political subdivision is located but also in any county where other defendants are amenable to suit."

■ As to Northampton Youth's preliminary objections for a more specific pleading, we affirm Common Pleas in finding that the complaint, as is, satisfies the requirements of Pa. R.C.P. No. 1019(a) that requires a complaint to contain "a 'concise and summary' statement of the 'material facts' that underlie the plaintiff's claims." *Dickerson v. Brind Truck Leasing,* 362 Pa.Superior Ct. 341, 345, 524 A.2d 908, 910 (1987).

164 ▮▮▮▮▮▮▮▮▮▮▮

▮▮ Finally, we agree with Common Pleas in not striking Count III, the intentional infliction of mental distress allegations of the complaint, but we reverse Common Pleas' granting of Northampton Youth's demurrer to Count IV, the Gibbses' punitive damages claim. In *Carson v. City of Philadelphia*, 133 Pa.Commonwealth Ct. 74, 574 A.2d 1184 (1990), this Court clarified the type of conduct that constitutes intentional infliction of emotional distress as follows:

> Under section 46 of the Restatement of Torts 2d, a person who by extreme and outrageous conduct intentionally or recklessly causes severe or emotional distress to another is subject to liability for such emotional distress. The Restatement defines outrageous conduct as conduct or statements which go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community.

*Id.* at 81, 574 A.2d at 1187.

The determination of whether Concerned Services' and Northampton Youth's failure to disclose vital negative information concerning Michael and his natural parents constitutes outrageous and extreme conduct recklessly causing the Gibbses to sustain emotional distress, is an evidentiary question for the trier of fact. Moreover, if the Gibbses prevail as to their fraud, misrepresentation and emotional distress claims, "[p]unitive damages are permitted to punish outrageous conduct[,]" and "[s]uch damages are proper punishment and deterrence for extreme behavior and are subject to strict judicial controls." *Moore v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 586, 592, 571 A.2d 518, 521–22 (1990), *petition for allowance of appeal denied*, 527 Pa. 589, 588 A.2d 511 (1991).

In summation, based on the foregoing analysis, we: reverse Common Pleas in its granting of demurrers to (Count I) Wrongful Adoption and (Count II) Negligent Placement of Adoptive Child, of the Gibbses' complaint; affirm Common Pleas in denying Northampton Youth's preliminary objections arguing for change of venue, for a more specific pleading, and for elimination of (Count III), the intentional infliction of emotional distress allegations of the complaint; and reverse

Common Pleas in dismissing (Count IV), the punitive damages claim of the complaint.

## ORDER

AND NOW, this 20th day of August, 1992, the order of the Court of Common Pleas of Bucks County is reversed in part and affirmed in part. The trial court is reversed insofar as it relates to its granting of demurrers to (Count I), Wrongful Adoption and (Count II), Negligent Placement of Adoptive Child and to dismissing (Count IV), the punitive damages claim of the complaint.

The trial court is affirmed insofar as it relates to its denying Northampton Youth's preliminary objections arguing for change of venue, for a more specific pleading, and for elimination of (Count III), the intentional infliction of emotional distress allegations of the complaint.

PALLADINO, Judge, dissenting.

Today, the majority creates causes of action for wrongful adoption and negligent placement of an adoptive child and in so doing, reverses the Court of Common Pleas of Bucks County with respect to the demurrers to counts I and II of the Gibbses' complaint. I respectfully dissent and would affirm the Court of Common Pleas of Bucks County.

I believe that the origination of causes of action is the province and prerogative of the General Assembly through the promulgation of statutory law and of the Supreme Court of Pennsylvania through the delineation of common law. *See Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978); *Armstrong v. Pennsylvania Board of Probation and Parole*, 46 Pa.Commonwealth Ct. 33, 405 A.2d 1099 (1979). The majority admits that "there is no precedential body of Pennsylvania statutory or case law" which acknowledges the torts of wrongful adoption and negligent placement of an adoptive child. Therefore, I would refrain from recognizing such causes of action.