OPINION
Appellants, James M. and Barbara A. Hrastar, appeal from the Geauga County Court of Common Pleas judgment entry dated April 6, 2000.
On December 22, 1992, appellants entered into agreement with appellees, Lawrence F. and Judith A. Thompson, to purchase appellees' home at 11359 Willow Hill Drive, Chester Township. Title to the property was transferred to appellants on February 11, 1993.
The home was located on the edge of a ravine. Within a year of appellants taking possession of the home, the slope, which constituted appellants' backyard, began to subside. The problem was serious enough that by September 9, 1994, C.R. Sutherland, acting on behalf of appellants, had written to Alan Esser ("Esser") of EDP Consultants, Inc. ("EDP"), confirming that appellants desired for EDP to make an engineering study of how best to stabilize the subsurface conditions on the property. One problem identified by EDP was a large amount of substandard fill on the property. Esser recommended in September 1994, that the fill be removed. He also suggested at the end of 1994, that appellants seek legal advice with respect to the soil problems on their property. On November 23, 1994, Vallen Contractors submitted a bid of $28,500 to remove the fill.
Before the fill could be removed, the site suffered additional deterioration, resulting in further inspections by Esser. He compiled a report in June 1995 (the "EDP Report"), stating that the soil instability was caused by the dumping of uncontrolled fill on the property shortly before appellants purchased their home. The report also suggested that the foundation of the house may have been repaired at some time in the past, with the repairs possibly having been necessitated by slope movement.
Appellants filed a complaint on January 8, 1999. They alleged in their complaint that appellees' dumping of uncontrolled fill on the property, prior to selling it to appellants, caused instability in the slope and, thereby, jeopardize the structural integrity of the home's foundation. The complaint further alleged that they had spent $83,000 to remedy the problem.
On October 14, 1999, appellees filed a motion for summary judgment. In their motion, appellees argued that, by the time appellants filed their complaint on January 8, 1999, the four-year statute of limitations had run on appellants' cause of action for fraudulent concealment. The trial court granted appellees motion in an April 6, 2000, judgment entry.
Appellants have filed a timely appeal and make the following assignment of error:
 "The trial court erred in granting [appellees'] motion for summary judgment by finding that the four (4) year statute of limitations as set forth in R.C. 2305.09(C) had expired thereby barring [appellants'] claim."
The statute of limitations for fraud actions is governed by R.C. 2305.09, which states, in part, that "[a]n action for any of the following causes shall be brought within four years after the cause thereof accrued: * * * (C) For relief on the ground of fraud * * *." In the case of fraud, the cause of action "does not accrue until the fraud and wrongdoer are actually discovered." Burr v. Stark Cty. Bd. Commrs. (1986),23 Ohio St.3d 69, paragraph three of the syllabus.
Appellants argue that the fraud, in this case, was not discovered until June 1995, when they received the EDP Report indicating that repairs had been made to the foundation in the past. Therefore, the complaint, which was filed in January 1999, was well within the four-year statute of limitations.
They further contend that, while they may have been aware of substandard soil conditions on the property prior to receiving the EDP Report, those conditions were simply a potential cause of action. We agree.
The elements of fraud are:
 "(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Id. at paragraph two of the syllabus.
In the instant case, there was no evidence of fraud until Esser compiled his EDP Report in June 1995. Prior to that time, there was no evidence that appellees had attempted to conceal a fact which they had a duty to disclose, or that they had attempted to mislead appellants into relying upon a false representation.
In finding that the statute of limitations had run, the trial court relied on the fact that Esser had visited the site in September 1994, and advised them that the substandard fill needed to be removed. However, at that time, there was no evidence that appellees had attempted to conceal a defect or made a false representation. Therefore, appellants could not have commenced an action for fraud.
Appellants were not aware that appellees had concealed a defect in the property until they learned in June 1995, that appellees had failed to disclose that repairs had been made to the foundation of the house. In the EDP Report, Esser noted the following:
 "[A]t the point where the house and garage join, it appears that some alteration to the structure has been made in the past. The masonry foundation wall extends beyond the face of the siding, the siding on the garage and house are not aligned, in some areas the masonry appears to have been repointed, and the exposed footing seems uncharacteristic of what the original builder might have done. This may be from repairs that have been made over several years, perhaps repairs necessitated by slope movement. The garage may have been built at a different time from the house and the workmanship was not the best. It's possible that general repairs were made to the masonry when the fill was placed and the sliding door was installed on the back wall of the house. We don't know at this time whether there is any significance to these observations."
Only when Esser informed appellants of the repairs made to the foundation were they aware of appellees' attempt to conceal a material fact. Because the statute of limitations did not begin to run until the fraud was discovered, the statute did not begin to run, in this case, until June of 1995. Therefore, appellants' complaint, which was filed on January 8, 1999, was filed in a timely manner.
For the foregoing reasons, appellants' assignment of error is well taken. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
FORD, J., dissents with Dissenting Opinion.
GRENDELL, J., concurs with Concurring Opinion.