This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff-Appellant Phyllis M. Bellinger has appealed from an order of the Summit County Court of Common Pleas that dismissed her complaint against Defendant-Appellee Hewlett-Packard Co. ("HP") for failure to state a claim upon which relief can be granted. This Court affirms.
 I
HP manufactures and sells inkjet printers. HP also separately sells replacement ink cartridges to service its printers, which come with a variety of features and contain different amounts of ink.
With each inkjet printer it sells, HP includes one black and one color ink cartridge. Beginning in 1998, HP began including with certain of its low-end inkjet printers what it has called "economy" cartridges. The distinguishing feature of these economy cartridges is that they contain approximately one-half the volume of ink as HP's "large" replacement cartridges.
The ink cartridges that HP provided with its printers did not come installed in the hardware, but were included in self-contained packages inside the printer boxes. The packaging containing the cartridges described their contents as economy cartridges. The outside of the printer box, however, as well as HP's marketing and promotional materials, stated only that ink cartridges were included; they did not describe the ink cartridges as economy cartridges.
In December 1999, Appellant purchased a HP inkjet printer which included an economy ink cartridge. Appellant thereafter filed a complaint against HP seeking certification of a statewide class consisting of purchasers of HP products which included the economy ink cartridges. Appellant's complaint asserted causes of action based on fraud, violations of the Consumer Sales Practices Act (R.C. 1345.01 et seq.) ("CSPA"), and negligent misrepresentation. Appellant alleged that HP unlawfully concealed that the ink cartridges it included with its printers were economy cartridges or otherwise contained less than a "full" amount of ink. HP responded by filing a motion to dismiss Appellant's complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. The trial court granted HP's motion to dismiss the complaint. Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error The trial court erred in granting [HP's] motion to dismiss, including, but not limited to, in:
 A. Finding that HP made no affirmative misrepresentation regarding the amount of ink in its print cartridges included with its low-end printers.
 B. Finding that an affirmative misrepresentation is necessary for a violation of the CSPA.
 C. Finding that [Appellant] failed to set forth a claim under the consumer sales protection act.
 D. Finding that [Appellant] failed to plead her fraud claim with sufficient particularity.
This Court reviews an entry of dismissal under Civ.R. 12(B)(6) denovo. Hunt v. Marksman Prod., Div. of S/R Industries, Inc. (1995),101 Ohio App.3d 760, 762, appeal not allowed (1995), 73 Ohio St.3d 1427. "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. University Community TenantsUnion (1975), 42 Ohio St.2d 242, syllabus. For purposes of ruling upon a Civ.R. 12(B)(6) motion, the trial court must accept all factual allegations as true and make every reasonable inference in favor of the nonmoving party. Shockey v. Wilkinson (1994), 96 Ohio App.3d 91, 94.
 Appellant's CSPA Claim
Appellant's complaint alleged that HP violated R.C. 1345.02, which provides:
 (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 (B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
 (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model if it is not;
* * *
 (6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends[.]
Appellant's complaint also alleged that HP violated R.C. 1345.03, which provides:
 (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
HP has argued that Ohio law requires an affirmative representation of some inaccurate or false information in order for a claim to be actionable under the CSPA. See Lintermoot v. Brown (Aug. 2, 1988), Van Wert App. No. 15-86-25, unreported, 1988 Ohio App. LEXIS 3065. Appellant, on the other hand, has contended that a knowing failure to disclose material information can constitute a deceptive act or practice under the CSPA. See Swiger v. Terminix Int'l Co. L.P. (June 28, 1995), Montgomery App. No. 14523, unreported, 1995 Ohio App. LEXIS 2826. This Court declines to hold, as HP has urged, that a failure to disclose information in the absence of an affirmative representation that is false or inaccurate can never give rise to an actionable claim under the CSPA. Even accepting all the factual allegations in Appellant's complaint as true, however, we conclude that neither the affirmative representations nor any unstated implications made by HP with respect to its ink cartridges support a claim that HP engaged in deceptive or unconscionable acts or practices under R.C. 1345.01 et seq.
It is undisputed that the outside of the printer box and the promotional and advertisement materials disseminated by HP represented that printers of the type purchased by Appellant included ink cartridges, and that ink cartridges were in fact included with the printers. Appellant's complaint, however, alleges that HP's failure to describe the ink cartridges included with its printers as "one-half full," "starter cartridges," or "economy cartridges" was a deceptive and unconscionable practice under the CSPA. The gravamen of Appellant's allegations is that HP's statement that ink cartridges were included with its printers constitutes a half-truth — that is, a statement true on its face that nevertheless implies in the mind of the prospective purchaser a belief that is not in accord with the facts. See, e.g., Stateex rel. Brown v. Bredenbeck (C.P. 1975), 2 O.O.3d 286, 287. Specifically, Appellant's complaint alleges that HP's representation that its printers included ink cartridges implied in the mind of the consumer that the ink cartridge would be a large — what Appellant has called a "full" — cartridge.
Appellant has consistently described the ink cartridges provided by HP as "half-full," which is accurate inasmuch as the economy cartridge contained approximately one-half the quantity of ink as the large cartridge. The "half-full" description, however, falls short of establishing that the statement "ink cartridge included" implies in the mind of the consumer a belief that is not in accord with the facts. If the statement "ink cartridge included" implied in the mind of the consumer that a full ink cartridge must be included, the amount of ink would only be important as a measure of how "empty" of ink the cartridge was.[1] Whether HP's representation that ink cartridges were included with its printers is deceptive or unconscionable, however, cannot depend upon a measure of the unfilled volume of the cartridge, irrespective of the quantity of ink it contains.
Appellant has also phrased HP's allegedly deceptive conduct as "misleading" consumers into believing that "the cartridges had the standard amount of ink." Appellant's complaint, however, has failed to allege any basis for the conclusion that "ink cartridge" implies in the mind of the consumer a "standard amount" of ink, or to identify what quantity of ink constitutes a "standard amount."[2]
Appellant has also argued that HP's representation that its printers included ink cartridges implied that the cartridges would be the large, rather than the economy, cartridges sold by HP as replacements. Again, however, Appellant has failed to allege any basis for her contention that consumers were somehow entitled to large rather than economy cartridges, when both sizes were marketed and sold by HP as replacement cartridges for its printers. The mere fact that HP once included large cartridges in all its printers cannot reasonably be interpreted by Appellant to mean that HP's later inclusion of economy cartridges with its inexpensive line of printers is deceptive or unconscionable.
Appellant has also argued that HP's use of the word "economy" to describe the cartridges with the lesser amount of ink constitutes a deceptive or unconscionable practice. The crux of Appellant's objection to HP's use of the word "economy" is that products labeled "economy" are understood to provide more volume per dollar than "standard" or "large" products, whereas HP's economy cartridges provide less ink than its large cartridges. Appellant relies upon a Federal Trade Commission ("FTC") regulation, 16 C.F.R. § 502.102, which describes the manner in which the term "economy size" may be used on certain consumer commodities. However, the FTC's own interpretive bulletins and subsequent regulations explicitly exclude ink-related products from the "consumer commodities" to which the regulation applies. See 16 C.F.R. § 503.5(d);16 C.F.R. § 503.2(a). Moreover, Appellant's complaint alleges — and the entirety of the CSPA claims in her complaint are based upon the fact — that the outer packaging of the printers and HP's promotional materials omit the modifier "economy" in describing the included ink cartridges. The word "economy" appeared only on the packaging of the individual cartridges inside the printer box, where a consumer would only find it after he had purchased and removed the printer from its packaging.
Finally, Appellant has devoted a significant portion of her brief to her argument that the CSPA claims in her complaint meet the statutory requirements to proceed as a class action. The trial court, however, found that Appellant's failure to state a CSPA claim upon which relief can be granted as an individual rendered unnecessary any consideration of whether Appellant's claims are properly maintainable as a class action. Accordingly, the class action question is not properly before, and will not be addressed by, this Court.
Even accepting all the factual allegations in Appellant's complaint as true and drawing every reasonable inference in favor of Appellant, this Court concludes that Appellant's complaint fails to state a claim upon which relief can be granted pursuant to R.C. 1345.02(A) or R.C. 1345.03(A). HP's representation that its printers included ink cartridges was true on its face. Moreover, Appellant's complaint fails to state any reasonable basis for its conclusion that HP's undisputedly true representation could imply in the mind of the consumer a belief that the cartridges would contain more ink than HP in fact supplied — i.e., was a half-truth. Accordingly, the trial court properly dismissed Appellant's claim for alleged violations of the CSPA for failure to state a claim upon which relief can be granted.
 Appellant's Fraud Claim
Appellant has dedicated the balance of her brief to arguing that the trial court erred in finding that Appellant failed to plead her fraud claim with sufficient particularity. Appellant has contended that her complaint both states a claim for fraud under Ohio law, and pleaded the allegations of fraud with particularity as required by Civ.R. 9(B).
In order to maintain an actionable claim for fraud, a plaintiff must establish the following elements:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.
Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. In addition, plaintiffs in Ohio must plead with particularity their allegations of fraud:
 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
Civ.R. 9(B). The requirements of Civ.R. 9(B) are satisfied if the plaintiff's complaint specifies "(1) [the] specific statements claimed to be false; (2) the time and place the statements were made; and (3) which defendant made the false statements." Pollock v. Kanter (1990),68 Ohio App.3d 673, 681-682.
In the instant case, Appellant has failed to identify any false or fraudulent representation made by HP. The only representation that Appellant's complaint alleges that HP made was that ink cartridges were included with its printers. This representation, however, was not false; it was true.
Nor can "concealment of a fact" form the basis of Appellant's fraud claim, because Appellant does not allege any cognizable duty on the part of HP to disclose any facts about its ink cartridges. See Fed. Mgt. Co.v. Coopers Lybrand (2000), 137 Ohio App.3d 366, 383, appeal not allowed (2000), 90 Ohio St.3d 1424 ("[A] duty to disclose is a requirement if concealment of fact is alleged as a basis for fraud."). Appellant's complaint does not allege, for example, that any special or fiduciary relationship existed between HP and herself or other consumers that would give rise to a duty to disclose. See Federated Mgt.,137 Ohio App.3d at 383 ("[T]he duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.").
Finally, HP's unqualified representation that "ink cartridges are included" cannot itself be construed as imposing upon HP a duty to further describe the cartridges as economy cartridges, because HP's representation was not a half-truth. As discussed supra, HP's representation that ink cartridges are included is not rendered untrue or misleading by HP's omission of the fact that the ink cartridges included were economy cartridges.
Even accepting all the factual allegations in Appellant's complaint as true and drawing every reasonable inference in favor of Appellant, therefore, Appellant's complaint fails to state a claim for fraud upon which relief can be granted. The trial court properly dismissed Appellant's claim for fraud for failure to plead with sufficient particularity any false or fraudulent representations made by HP.
 III
Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BAIRD, P.J., BATCHELDER, J. CONCUR.
[1] Thus, under Appellant's "half-full" theory, if HP supplied printer cartridges that were five times the size of the large cartridges yet were only half full of ink, its representation would still be a half-truth because the expectation that a full printer cartridge would be supplied had not been met. Conversely, if HP included ink cartridges that were one-fifth the size of the economy cartridge but were full of ink, HP's representation would not be a half-truth.
[2] Ink cartridges differ in this respect from items that are by definition sold with readily quantifiable specifications, such as a gallon of milk or a 60-watt light bulb. An analogue better suited to the ink cartridge is the batteries sometimes included with battery-operated consumer devices. Although the consumer might desire brand-name, alkaline batteries, the representation that "batteries are included" is not a half-truth if the consumer instead receives generic batteries with a shorter life expectancy.