Plaintiff-appellant David Cervone appeals from the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of defendant-appellee Charles Boris. For the following reasons, the trial court's judgment is affirmed.
Appellant and Linda Matteucci divorced in 1983 and agreed that appellant would be the residential parent of their four year old child, Charles Cervone. However, Mrs. Matteucci filed a motion for a change of custody in 1991, after Charles expressed a desire to live with her. Thereafter, appellant spoke to a social worker about certain problems that he perceived Charles was having. This social worker recommended testing and counseling for Charles, his parents and their spouses. All parties eventually agreed to the recommendation and chose a psychiatrist, Dr. William Price, at Specialty Care Psychiatric Services, Inc. to test and counsel them.
At Dr. Price's suggestion, the attorneys of appellant and Mrs. Matteucci wrote a joint letter to Dr. Price in March 1992. This letter outlined the scope of services to be provided as follows:
 "Please be advised that we are writing to you on behalf of each of our respective clients, David Cervone AND Linda Matteucci relevant to the psychological testing which is to be completed by your office.
 At the present time, the parties are attempting to determine the best interest of the minor child, Charles Cervone, as to the designation of the residential parent. As a result, we are requesting that testing and counseling be done with the minor child, the parents of the minor child, and the spouses of the parents of the minor child. At the conclusion of said testing and counseling, we are requesting that a Letter be issued to each of our offices indicating, if possible, which residence the child should reside at or in the alternative whether joint parenting would be in the best interest of the child."
After the requested testing was performed, Dr. Price informed appellant that the participants did not require his services as a psychiatrist. He referred the participants to appellee, a licensed independent social worker who counseled clients at Specialty Care. Dr. Price showed the above letter to appellee. Appellee had several separate meetings with Charles, with appellant and his wife, and with Mrs. Matteucci and her husband. While meeting with appellant and his wife, appellee told them that he would not divulge any confidences that were shared during the meetings. In June 1992, appellee discontinued his employment at Specialty Care and began employment at First Medical Psychiatric Counseling Associates, Inc. Charles and his family continued seeing appellee at his new facility.
On August 6, 1992, appellee sent a letter to Judge Leskovyansky of the Domestic Relations Court and sent copies of the letter to the attorneys of appellant and Mrs. Matteucci, respectively. Appellee's letter provided:
 "The purpose of this letter is to advise those parties vitally concerned with the disposition of Charles Cervone's custody. Based on a number of variables including ongoing counseling with Charles, formal assessment and clinical interviews with both respective parents and a psychological evaluation administered by my colleague Jack T. Raver, M.Ed., Ohio Licensed Psychologist, it is my considered professional judgment that Charles be allowed to follow his wishes and reside with his natural mother, Mrs. Matteucci. He is, in my opinion, clearly competent to make such a decision.
 It is apparent that the adversarial nature of the parental relationship has influenced each parent's perception of the needs of the child. However, based on the relationship of the child with each of his parents, I strongly believe his decision to reside with his mother to be the more nurturing of the two and therefore more consistent with the needs of the child at this time. As in any case of this sort, no totally happy resolution can occur. Charles should be given an in Camera Interview and it is my hope that the child be protected from any emotional backlash which might result from that event."
When appellant discovered that appellee had sent a letter to the court, he argued with appellee and terminated his services. A hearing on the motion to change custody was held on February 2, 1993, at which Mrs. Matteucci called appellee to testify. Appellant asserted social worker-client privilege with regards to appellee's testimony. Hence, the court limited appellee's testimony to cover only what he had learned from Charles and Mrs. Matteucci. Thereafter, Mrs. Matteucci became the residential parent of Charles pursuant to an agreement signed by appellant and incorporated into a court order.
Appellant immediately filed suit against appellee.[1]
Appellant's amended complaint outlines four causes of action: breach of confidentiality and fiduciary duty, breach of contract, misrepresentation, and intentional infliction of emotional distress. In June 1996, appellee moved for summary judgment. The court granted summary judgment for appellee in September. This timely appeal followed.
Appellant sets forth two assignments of error, the first of which alleges:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT, TO THE PREJUDICE OF PLAINTIFF-APPELLANT."
The assignment of error is divided into four sub-assignments of error, one for each of the causes of actions alleged in the complaint. The first sub-assignment provides:
 "APPELLANT'S CLAIM FOR BREACH OF CONFIDENTIALITY AND FIDUCIARY DUTY IS PREMISED UPON COMMON LAW AND COGNIZABLE UNDER R.C. 2317.02."
Social workers are guided by codes of ethical practice. R.C.4757.11 and 4757.36 (A) (10). A client's right to confidentiality shall be protected by the social worker. Ohio Adm. Code 4757-5-01. "Confidential information shall only be revealed to others when the clients * * * have given their informed consent * * *." Id.
Appellant's cause of action for breach of confidentiality is based upon opinions expressed by appellee in his letter to the Domestic Relations Court and by way of his testimony in front of said court. Appellant's main argument is that a social worker's opinion which is based in part upon a collateral client's revelations is confidential even if the opinion does not divulge confidential information about the collateral client and could have been formulated on the basis of the primary client's revelations alone.
The letter written by appellee to the court reveals that the primary client, Charles, desires to live with his mother. Appellee opined that Charles is competent to make this decision. There is no indication on the face of the letter that appellee revealed information that was communicated to him by appellant in confidence. Appellant admits that appellee has not divulged the contents of any statements made during their meetings. Nonetheless, appellant points to the deposition testimony of appellee which was taken in preparation for this lawsuit where appellee admitted that personal information revealed by appellant was a variable affecting the opinion set forth in appellee's letter. (Depo. 71).
However, appellee also stated that his knowledge was derived not solely from information revealed by appellant but also from sources independent of any such revelations. Charles was the reason appellee's assistance was sought. Appellee formulated an opinion on the best interests and the competence of Charles as requested by the parents of Charles. If appellant wanted to ensure that appellee could not give an opinion to the court which affected the custody of his son, then he should not have asked Charles, his ex-wife and her spouse to seek counseling from appellee in order to determine the best interests of Charles. Further, he should not have consented to the letter written to Dr. Price, who owned the clinic for which appellee worked, asking for an opinion on which parent should be the residential parent.
The testimony given by appellee before a referee in the Domestic Relations Court was limited to exclude any opinions based upon discussions with appellant. Thus, appellee was only permitted to testify as to his opinions that were based upon discussions with Mrs. Matteucci and Charles. Appellant complains about the following excerpt in appellee's testimony:
 "Q. My question was, how would he [Charles] do in a shared parenting agreement?
 A. I don't think he would do very well at all. And my opinion is that I think the communication system lacks quality from the ex-spouses. You can't have shared parenting, quality shared parenting, if you haven't resolved the issue from the divorce.
 Q. Communication? We're talking about the mother and father?
A. From the respective parents.
Q. To each other?
A. Yes." (Partial Tr. 34).
As support for his breach of confidentiality allegation, appellant points to the following portion of appellee's deposition testimony:
 "Q. Do you see your opinion there that you don't think the communication system was favorable between the ex-spouses?
A. Correct.
 Q. Okay. Isn't that opinion based at least in part on information that you obtained from Mr. Cervone?
 A. The information was based in part on what Charlie shared with me throughout his sessions.
* * *
 Q. Did David Cervone talk to you about the extent and nature of his communication with his former spouse?
A. He spoke of difficulties with his former spouse.
 Q. Do you remember him even telling you that he just doesn't talk to her?
A. I don't remember that.
 Q. But in any event, he did give you information regarding the communication difficulties between the spouses?
A. Yes.
 Q. So this would be one example of an opinion that you stated in court that was based at least in part upon information that you got from David Cervone?
A. Correct." (Depo. 85-86).
Appellee admitted that his opinion about the communication between appellant and Mrs. Matteucci was based in part upon information given to him by appellant. However, this information was also given to him by Charles and may have been given to him from Mrs. Matteucci as well. The court instructed appellee that he was permitted to express opinions that were based upon information gained from Mrs. Matteucci and Charles.
Pursuant to R.C. 2317.02 (G) (1), a social worker shall not testify concerning a confidential communication received from a client or concerning the social worker's advice to the client. This statute does not disqualify a person's social worker as a witness; it merely disallows testimony concerning confidential communications. Also, a client can expressly consent to the testimony of a social worker, thereby waiving the privilege. R.C.2317.02 (G) (1) (b).
In the case sub judice, the social worker-client privilege was waived by Mrs. Matteucci and by Charles. Thus, as the court ruled, appellee was permitted to testify concerning the confidential communications received from Mrs. Matteucci and Charles and concerning his advice to them. Appellant cannot file suit against appellee for following court orders. If appellee had a problem with appellant's testimony because it contained opinions that could have been derived from both privileged and nonprivileged sources, then appellee should have objected to the referee's evidentiary ruling and utilized the appeal process. Instead, appellant consented to the order appointing Mrs. Matteucci as the residential parent. For all of the above reasons, this sub-assignment of error is overruled.
Appellant's second sub-assignment contends:
 "APPELLEE OWED APPELLANT A DUTY TO NOT MAKE PUBLIC ANY OPINIONS BY AGREEMENT, AND THE EVIDENCE SUPPORTS APPELLEE'S BREACH OF SAME TO APPELLANT'S DAMAGE."
Appellee promised appellant that he would keep all revelations confidential. Appellant complains that appellee breached his contractual duty to keep certain confidences. However, under our above analysis, this argument fails.
Appellant also argues that, at a March 27, 1991 meeting, appellee agreed that any opinion letter about the custody of Charles would be written by Dr. Price. Appellant states that on May 29, 1991, appellee reiterated this understanding by stating that even though he was terminating his association with Dr. Price's clinic and appellant was following appellee to a new clinic, Dr. Price would remain responsible for the opinion letter. In support, appellant submits the affidavits of himself and of his wife who was present at both meetings.
The fact that Dr. Price did not formulate an opinion letter is not the fault of appellee. Additionally, we fail to see how appellee's letter regarding the best interests of Charles, the primary client, constituted breach of duty toward appellant. As aforementioned, appellant asked his ex-wife who had just filed a motion against him in the Domestic Relations Court to come to meetings to determine which parent should be the residential parent. Appellant participated in sending a letter to Dr. Price which asked that his "office" perform psychological testing and counseling and then formulate an opinion on the best interests of Charles. Dr. Price referred the participants to appellee who furnished the counseling and the letter. Appellee's primary client was Charles who desired to live with his mother. The letter served to further the wishes of appellee's primary client. As appellee argues, the cause of action in this case, if one so existed, would lie with Charles since the letter reveals his confidences. This sub-assignment is overruled.
Appellant's third sub-assignment of error provides:
 "THE EVIDENCE DEMONSTRATES APPELLEE'S MATERIAL MISREPRESENTATIONS TO APPELLANT."
Appellant sets forth the elements of his third cause of action as follows: making a material representation with knowledge of its falsity or with utter disregard and recklessness as to its falsity, intending to mislead and causing justifiable reliance which results in injury. Burr v. Board of Cty. Commrs. of StarkCty. (1986), 23 Ohio St.3d 69. Appellant claims that he need not establish fraudulent intent because the doctrine of constructive fraud applies in cases involving a fiduciary relationship. Cohenv. Estate of Cohen (1986), 23 Ohio St.3d 90.
Appellant's brief complains that appellee divulged confidential matters after misrepresenting that all information disclosed by appellant would remain confidential. However, we have previously analyzed this allegation and determined that appellee did not disclose any confidential information received from appellant and that any opinions expressed by appellee were derived from information obtained from Charles and Mrs. Matteucci. Thus, there is no genuine issue of material fact as to the existence of a false representation. Appellee represented that he would not disclose confidences and he fulfilled that representation by not disclosing any confidences. Accordingly, this argument is overruled.
Appellant's fourth sub-assignment of error alleges:
 "GENUINE ISSUES OF MATERIAL FACT ALSO EXIST WITH REGARD TO APPELLANT'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."
The elements for this cause of action are intentionally or recklessly causing severe emotional distress to another by extreme and outrageous conduct. Yeager v. Local Union 20 (1983),6 Ohio St.3d 369. Appellant asserts that whether his emotional distress was severe and whether appellee's conduct was extreme and outrageous are not proper questions to resolve on summary judgment. However, we have held that summary judgment is proper where the trial court determines as a matter of law that the defendant's conduct is not beyond all possible bounds of decency or, that the plaintiff failed to allege serious and debilitating mental anguish. Tarver v. Calex Corp. (1998), WL 74378 *13. Since we held that no confidential information was disclosed by appellee, there exists no behavior which would constitute extreme and outrageous conduct. As such, this sub-assignment of error is overruled.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO THOROUGHLY EXAMINE ALL OF PLAINTIFF-APPELLANT'S CLAIMS AND THE SUPPORTING MATERIALS SUBMITTED BY PLAINTIFF-APPELLANT, TO THE PREJUDICE OF PLAINTIFF-APPELLANT."
Appellant complains that the trial court's judgment entry does not discuss his claims for breach of contract, misrepresentation, and intentional infliction of emotional distress. The judgment entry states that appellee did not disclose any privileged or confidential information either in his letter to the court or in his testimony in front of the referee. As can be seen from our prior discussion, all of appellant's causes of action revolve around the allegation that appellee divulged confidential information or expressed an opinion derived therefrom.
Appellant posits that summary judgment must be reversed pursuant to Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, where the Court held that the trial court has a mandatory duty to examine the material submitted under Civ.R. 56 (C). However, we fail to see the analogy between Murphy and the case sub judice. In Murphy, the trial court admitted that it did not read the motion for summary judgment, the opposition to summary judgment, or the attachments which included many depositions. Id. at 359. Because the court granted summary judgment based solely on oral argument, the Supreme Court of Ohio remanded the case to the trial court. Id. In the case at bar, there is no indication that the trial court failed to review all of the material submitted to it. In fact, the judgment entry begins, "From the affidavits, briefs, and other exhibits filed herein * * *." Therefore, this assignment or error is without merit.
In conclusion, there exists no conflicting testimonials in this case. The issue was whether, under the facts and circumstances, appellee engaged in breach of confidence, breach of contract, fraud, or intentional infliction of emotional distress by disclosing an opinion held about the best interests of a child in a child custody case. Appellant sought counseling for his son for the purpose of determining whether he or his ex-wife should be their son's residential parent. Appellant asked his ex-wife and her husband to meet with appellee for the sake of their child. Appellant was a collateral client while his son was the primary client. By speaking for his primary client and revealing an opinion on his client's best interests, appellee did not disclose confidential information gained from his meetings with appellant. Thus, appellee was entitled to judgment as a matter of law.
For the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE
[1] He attempted to add Mrs. Matteucci and her attorney as defendants but the court dismissed them as parties. Appellant appealed the dismissal to this court in case number 94-CA-96. We held that there lacked a final appealable order. Appellant then voluntarily dismissed his complaint with prejudice. In July 1995, appellant refiled his lawsuit against appellee.