OPINION
{¶ 1} On October 5, 1998, appellant, Pamela Smiley, nka Pamela McCarty, and appellee, Terry Bratka dba Bratka Interior, Ltd., entered into a contract whereby appellee would provide interior design services to appellant. Work began in March of 1999 and concluded in September of same year.
 {¶ 2} On March 31, 2000, appellee filed a complaint against appellant claiming breach of contract, unjust enrichment, detrimental reliance and damage to business reputation. Appellant filed a counterclaim claiming breach of contract, unjust enrichment, fraud and violations of the Consumer Sales Practices Act and the Home Solicitation Sales Act.
 {¶ 3} Hearings before a magistrate were held on June 28, 2001, August 9, 2001 and September 27, 2001. By decision filed February 4, 2002, the magistrate found in favor of appellee in the amount of $17,615.25, with a credit to appellant in the amount of $5,221.80 for the balance of her account.
 {¶ 4} On February 19, 2002, appellant filed objections to the magistrate's decision. By judgment entry filed June 18, 2002, the trial court denied the objections and approved and adopted the magistrate's decision.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 6} "The court erred as a matter of law in adopting the magistrate's decision, and rendering judgment for appellee in that the final order of the court is against the manifest weight of the evidence."
 I {¶ 7} Appellant claims the trial court's decision was against the manifest weight of the evidence. We disagree.
 {¶ 8} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson, 66 Ohio St.3d 610, 1993-Ohio-9.
 {¶ 9} Within the sole assignment of error, appellant raises several issues. Appellant argues she proved all of her claims, appellee did not prove breach of contract nor damages and appellee's claims should be barred because of his illegal conduct.
 {¶ 10} Before we begin our review, we note the magistrate's decision does not include specific findings of fact and the conclusions of law, but is a decision wherein the facts and law are intertwined. Neither party requested specific findings of fact and conclusions of law pursuant to Civ.R. 52. The facts and legal issues preserved by the parties are totally intertwined. We will discuss each issue as raised by this assignment of error.
 BREACH OF CONTRACT CLAIMS {¶ 11} Each party claims the other breached the contract as it was memorialized in Exhibit 119. Appellant claims appellee failed to timely fulfill the contract and did not give her the opportunity to reject or make cost sensitive decisions regarding the accessories for her home. September 27, 2001 T. at 60-63, 90-91. Appellee claims appellant unilaterally breached the contract when she refused to pay for the accessories in her home some two weeks after delivery and canceled all other orders. Exhibits 7 and 130.
 {¶ 12} The trial court found the contract had been modified throughout the entire time. We find this conclusion is supported by the evidence at trial. The original contract provided for a preliminary presentation of the design concept. This was done as evidenced by Exhibit 125. The parties reviewed this proposal and deletions and additions were personally approved by appellant. September 27, 2001 T. at 23-27. As a matter of course, nothing was ordered until the price and design were reviewed by appellant and a half down deposit was made. Id. at 19, 27. This is evidenced by the numerous purchase orders that reflect a half down deposit. Exhibit A.
 {¶ 13} Appellant admitted the breadth and scope of the project changed and modifications to the original plan were made. September 27, 2001 T. at 113-115; Exhibit 125. However, the cost and method of payment did not change from the original contract. Appellee received a forty percent mark-up on all items ordered except for floorcoverings. Exhibit 119. Appellant had the option of using her own floorcovering sources, but there is no evidence that appellant pursued her own contacts. Id. at 20-21, 111.
 {¶ 14} Appellant also claims a restocking fee was not part of the original contract. September 27, 2001 T. at 22. Exhibit 119 does not include such a provision, but does include a noncancellation of orders after three days to protect appellee "against the cancelling of those orders and costs that would be incurred after that time." June 28, 2001 T. at 21. Appellee initiated the thirty percent restocking fee for re-selections and cancellations made after the cancellation time as compensation for his time and efforts associated with late cancellation. Id. T. at 21-22. Appellee explained the thirty percent restocking fee was not charged until appellant cancelled the entire project in September of 1999. Id. at 22-23. The trial court ordered the following as to the restocking fee:
 {¶ 15} "Therefore, the Court orders the Plaintiff to deliver to the Defendant furniture, carpets and any other items of which he has possession and the Defendant is to pay the Plaintiff the charges for those items including any restocking fee, shipment freight and minus any credit." See, Magistrate's Decision filed February 4, 2001.
 {¶ 16} Upon review, we fail to find the award for any restocking fee is appropriate because appellant had already paid a deposit for these items and was charged with the total amount. Because the trial court ordered appellant to pay for the items within her possession and the items stored by appellee on her behalf, we find the dispute over the restocking fee to be a red herring.
 {¶ 17} As the evidence demonstrates, there was no major dispute between the parties until appellant realized the accessories in her home exceeded her budget. June 28, 2001 T. at 96; September 27, 2001 T. at 136-137. During the course of decorating the home, the general practice was for appellee to buy an accessory and appellant would either accept or reject it. Id. at 75-77; Id. at 51, respectively.
 {¶ 18} As the time for appellant's Labor Day party approached, appellant permitted appellee carte blanche to accessorize the home. June 28, 2001 T. at 44, 77-78. Prior to the party, appellee related to appellant's husband the cost of the accessories "might be running around I think maybe eight, 15, possibly 20, in there." Id. at 79. Early on in the accessorizing process, appellee never objected except for a plaque with faces on it, an ice bucket, champagne glasses and brandy candlesticks. Id. at 81-83. Although appellant provided appellee with a handwritten instruction sheet on accessorizing the home, she told appellee to use his discretion. See, Exhibit D.
 {¶ 19} Appellant concedes timeliness of the project did not become important until she set an imaginary deadline for the Labor Day party. September 27, 2001 T. at 128. The home was totally accessorized by Labor Day.
 {¶ 20} We concur with the trial court's finding that appellee did not breach the contract and appellant breached the contract by refusing to pay for the accessories in her possession beyond the three day cancellation provision.
 FRAUD {¶ 21} Appellant claims appellee is barred from recovery because of fraud and the fact that he violated the Consumer Sales Practices Act by using deceptive and fraudulent dealings.
 {¶ 22} The elements of fraud are as follows:
 {¶ 23} "(a) a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 24} "(b) which is material to the cause at hand,
 {¶ 25} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and
 {¶ 26} recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 27} "(d) with the intent of misleading another into relying upon it,
 {¶ 28} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 29} "(f) a resulting injury proximately caused by the reliance." Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus, following Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167.
 {¶ 30} The trial court specifically found no fraudulent inducement in the initiation of the contract. In fact, appellant specifically testified all went well until the accessorizing of the home. September 27, 2001 T. at 10-11, 52. Appellant testified the approval and deposit procedures were satisfactory. Id. at 27.
 {¶ 31} The crux of appellant's fraud claim concerns a dispute over the cost per yard of carpeting. Appellant claims she was overcharged for the carpet and provided evidence from the distributor as to the cost per yard. Id. at 101-102. However, it was established the cost did not include pad, installation, freight or moving of the furniture. Id. at 103-104.
 {¶ 32} Appellant also argues a $1,000 deposit for art glass to be installed in her home was never credited. Appellee testified the deposit was for the design which was paid directly to the supplier and no refund was applicable. June 28, 2001 T. at 109-111; August 9, 2001 T. at 113.
 {¶ 33} We concur with the trial court's assessment of the evidence there was no showing of fraudulent inducement to sign the contract and there was evidence to support appellee's charges for the carpet and art glass.
 {¶ 34} There was considerable testimony about paid for items that were being held by appellee after appellant canceled all orders. September 27, 2001 T. at 68-88. The trial court granted appellant possession of her items and essentially sustained her position. As noted earlier, the thirty percent restocking fee was not established by the evidence and would not be due on items appellee was ordered to provide to appellant.
 DAMAGES {¶ 35} Appellant claims appellee failed to establish his damages on the cost of accessories. Appellee presented numerous invoices as to the price of the accessories in the home. See, Exhibit A. Appellant argues despite the price on the invoices, appellee had the duty to provide proof of his costs for each item. The numerous invoices dated September 17, 1999 for accessories show a balance due of approximately $16,246.14 and are supported by the evidence as being placed in appellant's home. June 28, 2001 T. at 77-78, 87-96; Exhibit A. The items placed in the home prior to the pre-party accessorizing work had been paid for via an earlier deposit. See, Invoice 106546.
 {¶ 36} At this juncture, we note pages 97-120 of the June 28, 2001 transcript are missing. As noted in the facts provided in appellee's brief, much of the testimony on the costs of the accessories is within these missing pages. Absent a complete transcript on this issue, we must defer to the decision of the trial court. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197.
 {¶ 37} In its judgment entry of June 18, 2002, the trial court concluded the amount of damages and credits as follows:
 {¶ 38} "The Defendant is to pay the Plaintiff Seventeen Thousand Six Hundred Fifteen Dollars and Twenty-five Cents ($17,615.25) and receive credit in the amount of Five Thousand Two Hundred Twenty-one Dollars and Eighty Cents ($5,221.80) for the balance of her account with Mr. Bratka. All items to be delivered within thirty (30) days. Ms. McCarty is to pay the balance of her account within sixty (60) days." See, Magistrate's Decision filed February 4, 2001.
 {¶ 39} Accordingly, we find the damages are supported by the evidence.
 CONSUMER SALES PRACTICES ACT {¶ 40} Because there has been no showing of fraud or deceptive sale practices, we concur the trial court was correct in so denying this claim, attorney fees and punitive damages.
 HOME SOLICITATION SALES ACT {¶ 41} Appellant claims the trial court erred in finding the Home Solicitation Sales Act did not apply. R.C. 1345.21(A) defines a "home solicitation sale" as follows in pertinent part:
 {¶ 42} "`Home solicitation sale' means a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. It does not include a transaction or transactions in which:
 {¶ 43} "(4) The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale.
 {¶ 44} "(6) The buyer has initiated the contact between the parties and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services does not fall within this exclusion."
 {¶ 45} It is clear from the record appellant initiated the contract with appellee, appellee had an established business and display room and the contract was entered into after the initial meeting. June 28, 2001 T. at 15, 134; August 9, 2001 T. at 94; September 27, 2001 T. at 15; Exhibit 119.
 {¶ 46} We conclude the evidence supports the trial court's conclusion that the transaction was not governed by the Home Solicitation Sales Act.
 {¶ 47} From our review of the record, we find the evidence is sufficient to support the trial court's decision. The very nature of the business relationship between the parties was one of continuous decisions and expanding scope. Appellant paid appellee a flat fee for design counseling ($800). Appellees only other compensation came from the forty percent mark-up on purchases. Appellant used appellee's expertise on areas not part of the original plan, i.e., kitchen counters, daughter's bedroom. The record demonstrates appellant was aware of how to reject an item as demonstrated by the plaque of faces and bar items. Appellant waited until well past the three day cancellation period before rejecting the bulk of the accessories placed in her home in time for the Labor Day party.
 {¶ 48} It is clear the trial court and magistrate had the correct view of the parties' business relationship in the way the award was fashioned apart from the thirty percent restocking fee which we have addressed. As the Supreme Court of Ohio noted in Myers, supra, trial courts in complex and lengthy litigation have clearly the best grasp of the facts and the judgment should not be disturbed.
 {¶ 49} Assignment of Error I is denied with the deletion of the thirty percent restocking fee on items held by appellee.
 {¶ 50} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.
Topic: Manifest weight re: dispute over interior design services.
By Farmer, J., Hoffman, P.J. and Edwards, J. concur.