Miller, J., dissenting.
{¶ 29} Respectfully, I dissent. First, when the factual question of commencement is close, as in this case, the law requires a jury to decide what event triggered the statute of limitations. Second, the trial court erred in excluding Washburn's expert geotechnical engineer on the basis of nondisclosure where the expert was timely disclosed as an expert in Washburn's discovery response, was mentioned by name in Gvozdanovic's discovery requests, whose opinions were summarized in Washburn's discovery responses, and who was identified in Washburn's complaint. Finally, I would reverse the trial court's granting of summary judgment on the merits of Washburn's fraud claim, as there remain genuine issues of material fact to be resolved.
A Close Question on the Discovery Rule Goes to the Jury
{¶ 30} Some cases simply must be tried. This is one. The question of when a party should have discovered a fraud for the purposes of commencing the running of the statute of limitations is a question of fact. Hamilton v. Ohio Savs. Bank , 70 Ohio St.3d 137, 140, 637 N.E.2d 887 (1994). The court below erred by not construing the facts in favor of the nonmoving party when it decided that Washburn should have discovered the fraud earlier than he did. Accordingly, summary judgment on the basis of the running of the statute of limitations should not have been granted.
{¶ 31} The majority recites the facts with a lawyer's eye and with perfect hindsight to conclude that an ambiguous statement that "there has been ground movement in the area," combined with knowledge of a leaky basement, a sloped basement floor, and a cracked basement wall, meant that Washburn should have discovered the alleged fraud prior to being told of the fraud by Gorton, the geotechnical engineer. Maybe Washburn should have been more alert to signs of fraud. But this case is a close call. Close calls go to the jury.
*170 {¶ 32} Construing the facts in favor of Washburn, the use of the passive voice and present perfect progressive tense in the disclosure that "there has been ground movement in the area" could be reasonably understood to mean that at some time in the recent past, minor ground movement occurred somewhere near the property. It would also be reasonable to conclude based upon Gvozdanovic's prior litigation over his sale of the adjoining property, and his testimony in that case to the effect that he would not purchase a property that he knew was the subject of an active landslide, that the disclosure was intentionally and artfully written to deceive, and thus did not provide notice of the fraud-the statement itself was the fraud.
{¶ 33} Further, wet basements, uneven floors, and cracked foundation walls are common in older homes. These facts do not necessarily rise to the level of constructive notice of an active landslide-and certainly are not notice that Washburn should have suspected that Gvozdanovic knew of the active landslide. Water intrudes into basements regularly. The evidence was that the walls were cracked, not shifted, bowed, or angled. There was no evidence submitted regarding the extent of cracking to indicate something significant should have been expected.
{¶ 34} None of the several experts Washburn hired prior to Gorton stated that an active, or for that matter, past landslide, had caused the leaky basement, sloped floors, and cracked walls. The stated cause of the uneven floor was settlement. The source of what was characterized as "moisture" in the basement was never identified. Critically, no one linked these particular issues to the landslide before Washburn spoke with Gorton. On this record, it would be reasonable to conclude that the first indication of a landslide on the property occurred a year after closing when Washburn's driveway began to crumble and heave, and new cracks formed. It was then that Washburn hired Gorton and Gorton informed Washburn both of the existence of the active landslide and of Gvozdanovic's knowledge of the landslide. Gorton was the key to Washburn's discovery of Gvozdanovic's alleged fraudulent behavior. A reasonable jury could conclude that the statute of limitations did not commence until Washburn had spoken with Gorton. Accordingly, summary judgment on the basis that the statute of limitations had run on Washburn's fraud claim was inappropriate.
{¶ 35} Because I would not affirm the trial court's granting of summary judgment on the basis of the statute of limitations, I address the remaining assignments of error.
Gorton was Timely Disclosed as an Expert
{¶ 36} The trial court excluded Gorton as an expert because "Plaintiff failed to identify Mr. Gorton as an expert at any time prior to the deadline in this case ." (Emphasis in original.) This was flatly wrong.
{¶ 37} The trial court set a case-management order requiring Washburn to disclose any expert witnesses by December 14, 2015. On December 3, 2015, Washburn specifically identified Gorton in response to Gvozdanovic's Interrogatory # 3, which sought the identity of expert witnesses. The answer also described the scope of Gorton's work, "Mr. Gorton identified the existence of a rotational slip fault and scarp-line surrounding the house." In response to Interrogatory # 15 requesting an identification of opinions, Washburn answered, "Mr. Gorton verbally stated that in his opinion stabilizing the structure would require the installation of 36? diameter concrete piers extending down to bedrock at each corner of the house. He also *171 estimated at that time that it could cost up to $150,000 to install such piers. Defendant may have a written report in his possession from this same expert obtained prior to selling the property to Plaintiff."
{¶ 38} As further proof that Gvozdanovic had actual knowledge of Gorton, it is necessary to look no further than Washburn's complaint in which he stated that "Plaintiff learned of the fraud perpetrated upon him by the Defendant on May 25, 2011 when he hired Quentin A. Gorton, P.E. to examine the cracking foundation walls ... and learned that this same engineer informed the Defendant of the landslide conditions a few years earlier." Also, Gvozdanovic's discovery requests sought the production of documents "sent to or received from Quentin A. Gorton, P.E., regarding the Property."
{¶ 39} In sum, Gvozdanovic had clear notice of Gorton being an expert witness, and that Gorton did not prepare an expert report. At that point, it became incumbent upon Gvozdanovic to pursue additional discovery of Gorton via deposition.
{¶ 40} Despite all of this, the trial court excluded Gorton as undisclosed. This error should be reversed. Moreover, even if Gorton's expert opinions were excludable, he would still remain a viable fact witness regarding Gvozdanovic's prior knowledge of the landslide. The trial court therefore should have, at a minimum, considered his affidavit for these facts alone.
There Is Sufficient Evidence of Fraud to Withstand Summary Judgment
{¶ 41} Construed most favorably to Washburn, there are sufficient indicia of fraud for the claim to survive summary judgment. See Burr v. Cty Comms. of Stark Cty. , 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), syllabus (setting forth the elements of fraud).
{¶ 42} There is evidence that Gvozdanovic was aware of the active landslide, both through the prior litigation regarding Gvozdanovic's sale of the adjoining property and from Gorton's affidavit that Gorton had told Gvozdanovic about the landslide on the property.
{¶ 43} Gvozdanovic completed a standardized, state mandated, "Residential Property Disclosure Form." That form's instructions require a seller to "Identify any material matters in the property that are actually known." It was on this form under the "Structural Components" disclosure that Gvozdanovic checked a box indicating that he was aware of "movement, shifting, deterioration, material cracks/settling ... or other material problems with the foundation, basement/crawl space, floors or interior/exterior walls." The form then reads, "If 'Yes', please describe:" Here, Gvozdanovic wrote "There has been ground movement in the area." Arguably, this statement was nonresponsive to the question and was evasive. Gvozdanovic did not disclose any movement of the foundation, floors, or walls in his response. There was no relation of the ground movement in the area to the structure.
{¶ 44} Gvozdanovic circled the word "No" in answer to the question whether there was any current settling, grading or erosion issues affecting the property, despite allegedly being aware of the landslide. Gvozdanovic left blank the space where he was to identify "any repairs, modifications, or alterations to the property" in response to "drainage, settling, grading or erosion problems since owning the property" despite the fact that he recently resurfaced the driveway to repair cracks allegedly caused by the landslide.
{¶ 45} Gvozdanovic also left blank the catchall section that required him to disclose "other known material defects in or on the property" where "material defects"
*172 was defined as including "any non-observable physical condition existing on the property that could be dangerous to anyone occupying the property or any non-observable physical condition that could inhibit a person's use of the property."
{¶ 46} Despite having several prompts to disclose the landslide on the property, Gvozdanovic could be found by a reasonable jury not to have done so. Gvozdanovic certified that "Owner represents that the statements contained in this form are made in good faith based on his/her actual knowledge as of the date signed by the Owner." A jury could reasonably conclude that Gvozdanovic fraudulently violated this provision.
{¶ 47} The acts of drywalling over the cracked foundation walls and resurfacing the driveway could reasonably be construed as acts done to hide damage allegedly caused by the landslide. A jury could reasonably find that these acts hid a latent defect and lulled Washburn into a false state of comfort regarding the status of the property.
{¶ 48} Accordingly, there was evidence of actionable fraud that, if believed, could result in a jury verdict in Washburn's favor. Summary judgment on the merits of the fraud claim was therefore inappropriate.
Conclusion
{¶ 49} The trial court erred in finding the fraud claim barred by the statute of limitations when a jury could have reasonably concluded that Washburn did not have cause to discover the alleged misrepresentation until alerted to it by Gorton. The court also improperly excluded Washburn's expert witness as undisclosed. Finally, the trial court should have allowed Washburn's fraud claim to proceed on the merits, as there were genuine issues of material fact left to be resolved.
{¶ 50} For these reasons, I would reverse the trial court's judgment, and remand the cause for further proceedings.