[Cite as *In re Estate of Ramun*, 2010-Ohio-6405.]

STATE OF OHIO, MAHONING COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 08 MA 124 |
| THE ESTATE OF MICHAEL RAMUN | ) | |
| | ) | |
| LOUISE RAMUN | ) | |
| | ) | |
| APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JOHN RAMUN, et al. | ) | |
| | ) | |
| APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common
                                Pleas, Probate Division, of Mahoning
                                County, Ohio
                                Case No.

JUDGMENT:                       Affirmed.

APPEARANCES:
For Appellant:                  Atty. John B. Juhasz
                                Atty. Lynn Maro
                                7081 West Boulevard, Suite 4
                                Youngstown, Ohio  44512

For Appellees:                  Atty. Marc S. Stein
                                Atty. Jay M. Skolnick
                                Nadler, Nadler & Burdman Co., LPA
                                20 West Federal Street, Suite 600
                                Youngstown, Ohio  44503

                                Atty. Christopher R. Opalinski
                                Atty. F. Timothy Grieco
                                Eckert, Seamans, Cherin & Mellot LLC
                                44th Floor, 600 Grant Street
                                Pittsburgh, PA  15219

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio

Hon. Joseph J. Vukovich

Dated: December 22, 2010

WAITE, J.

{¶1} Appellant, Louise Ramun, former Executrix of the Estate of Michael Ramun, appeals the decision of the Court of Common Pleas, Mahoning County Probate Division, overruling her motion to vacate the June 14, 1988, order approving and settling the final and distributive account of the estate. For the following reasons, the judgment of the probate court is affirmed.

{¶2} Michael Ramun died testate on November 17, 1986. Appellant was the residual beneficiary in the will. The inventory of the estate consisted primarily of twenty-one shares of stock in Allied Erecting and Dismantling Company, appraised at $1,305,897.00. Allied Erecting and Dismantling was a closely held corporation in which the decedent owned fifty percent of the stock, and John Ramun, the decedent's son, owned the remaining fifty percent of the stock. From the date of incorporation, Louise had been on the board of directors for the corporation and worked in the office, doing the banking and reconciling the incoming and outgoing checks.

{¶3} The stock was appraised for inventory purposes by Anness, Gerlach & Williams, which also served as the corporation's accounting firm. The appraisal of the stock was based on a financial statement dated December 31, 1986 ("December 31 financial statement").

{¶4} During the administration of the estate, Appellant sold the shares back to the corporation pursuant to a stock redemption agreement. According to her

affidavit, which was attached to the motion to vacate, John told her that she should redeem the stock in order to protect her personal assets from then-pending litigation between Allied and United States Steel. (Louise Ramun Aff., ¶7.)

{¶5} On August 19, 2005, some seventeen years later, Appellant filed the motion to vacate at issue in this appeal alleging fraud in the valuation of the stock. She claimed that unprocessed non-ferrous scrap, which included substantial amounts of copper and brass, owned by the corporation at the time of the appraisal and that should have been valued at approximately $20,000,000, was not included in the valuation of the stock.

{¶6} According to Appellant's affidavit, she discovered the omission during a deposition that she gave in *Michael D. Ramun v. John Ramun*, Case No. 04-CV-1738. In that case, Michael D. Ramun, the decedent's younger son, sought a preliminary injunction enjoining the corporation from enforcing a share transfer restriction that would secure a buy-out of Michael's then current twenty-five percent interest in the corporation.

{¶7} Appellant relies on a note in a second financial statement, captioned "Financial Statements and Accountants' Report March 31, 1986 and 1985" ("March 31 financial statement") to establish the alleged fraud. The March 31 financial statement, like the December 31 financial statement, did not include the approximate value of the scrap in the list of the assets of the corporation. However, the March 31 financial statement contained a series of notes at the end that were not included in the December 31 financial statement.

{¶8}   The note on which Appellant relies to establish fraud in this case is captioned "SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES," and reads, in pertinent part:

{¶9}   "Scrap Inventory:

{¶10}   "Inventory consists of the actual cost of scrap purchases still on hand at year-end (none at March 31,1986 and 1985) and is stated at the lower of cost or market under the first-in, first-out method.   Inventory does not include any accumulated scrap resulting as a by-product of current dismantling contracts.  Due to its nature as a by-product, no cost or book value is assigned to the metals and revenue is recognized when the scrap by-product is actually sold.  Included in the accumulated scrap are significant amounts of copper and brass for which a value had been estimated by management at March 31, 1986.  The estimated values are as follows:

"12,500 tons of copper at $1,300 per ton        $16,250,000

"2,500 tons of brass at $1,700 per ton          $4,250,000

                                                $20,000,000"

{¶11}  Appellant contends that the scrap was excluded from the December 31 financial statement for the purpose of devaluing the stock.  She further alleges that John exercised control over the valuation of the stock, because he hired his divorce attorney, Eugene Fox, to represent the estate, and also employed the corporation's accountant, Thomas Anness, the President of Anness, Gerlach and Williams, Inc., to value the corporation.  (Louise Ramun Depo., pp. 26-27.)  She contends that these

men conspired to defraud the estate and devalue the corporation's stock by excluding the scrap from the 1986 financial statement, with the ultimate goal that John would be the corporation's sole shareholder.

{¶12} John filed a response in opposition to the motion to vacate in which he denied any fraud in the valuation of the stock. According to his own affidavit, as well as the Anness affidavit which was filed with John's supplemental statement on May 15, 2008, unprocessed non-ferrous scrap on the business premises of the corporation in 1986 was a by-product of prior or current dismantling projects, and, pursuant to generally accepted accounting principles, no cost or book value could be assigned to it until it was processed and sold. (John Ramun Aff., ¶9, Thomas Anness Aff., ¶7.)

{¶13} According to John's affidavit, the corporation was faced with "significant exposure on a multi-million dollar [counter]claim" asserted by U.S. Steel during the estate administration. (John Ramun Aff., ¶15.) The corporation was not engaged in any active projects for several years after the suit was filed. (John Ramun Aff., ¶15.) Most of the scrap was sold after the estate was settled, from 1986 to 1992, while the U.S. Steel case was pending "in order to keep the [corporation] afloat and prevent [the corporation] from filing for bankruptcy." (John Ramun Aff., ¶10.) John also asserted that Appellant was aware of the scrap and the fact that it "had value" during the administration of the estate. (John Ramun Aff., ¶8.)

{¶14} On September 19, 2005, Appellant filed notices for the depositions of John and Anness, which were scheduled to proceed in the following month. Before

the depositions were conducted, the motion to vacate was stayed pending the outcome of an appeal of the probate court's denial of a motion to appear pro hac vice filed on behalf of one of John's attorney. The judgment entry denying the pro hac vice motion was overruled by this Court on June 22, 2007, and the matter was remanded.

{¶15} At a status conference several months after remand, on February 11, 2008, the probate court granted Appellant's request to submit a reply brief in this matter. After the reply brief was filed, on May 1, 2008, the probate court set a non-oral hearing for May 15, 2008. The May 1, 2008 judgment entry read, in pertinent part, "a non-oral hearing on this matter is hereby set for Thursday, the 15th day of May, 2008; it is further the Order of this Court that Movant and Respondent shall file any additional written statements of reasons in support or opposition on or before said hearing." (Emphasis omitted.) (5/1/08 J.E., p. 1.)

{¶16} In a pleading filed on May 15, 2008, the day that the non-oral hearing was scheduled, Appellant requested additional discovery and an oral evidentiary hearing. In this request, Appellant stated that there exist individuals who she "believes have pertinent information and may not provide the same voluntarily." (Supplemental Brf. at p. 2.) In the alternative, Appellant sought leave of twenty-one days to secure additional affidavits and/or records if discovery was not allowed.

{¶17} In the same pleading, Appellant moved to strike those portions of John's affidavit that claimed she was aware of or had full knowledge of certain facts during the administration of the estate. She also filed a copy of her deposition

testimony in *Michael D. Ramun v. John Ramun.* That same day, John filed a supplemental statement and the Anness affidavit.

**{¶18}** In a judgment entry dated May 21, 2008, the probate court found that Appellant failed to plead fraud with particularity pursuant to Civ.R. 9 and, in the alternative, failed to demonstrate fraud by clear and convincing evidence. (5/21/08 J.E., pp. 5, 7.) The probate court held that Appellant "has simply alleged fraud and that is insufficient to vacate the order approving the account." (5/21/08 J.E., p. 7.) The probate court characterized Appellant's motion for discovery as a "fishing expedition," to be conducted seventeen years after the fact. (5/21/08 J.E., p. 7.)

**{¶19}** The probate court also criticized Appellant's argument as "untenable," because she has filed an objection to her own inventory. (5/21/08 J.E., p. 8.) Finally, based on Appellant's role as an officer and employee of the corporation, the probate court concluded that her claim that it took seventeen years to uncover the alleged fraud was unbelievable. (5/21/08 J.E., p. 8.) The probate court did not consider John's statements that Appellant knew about the scrap and its value in denying the motion to vacate. This timely appeal followed.

**{¶20}** Because it appears from the record that Appellant did not sufficiently support her allegations of fraud and that the information on which she bases such claims was known or should have been known to her at the time she filed her final accounting in the estate seventeen years before, the trial court's decision is affirmed.

**{¶21}** The assignments of error will be taken out of order for the purpose of clarity of analysis.

## SECOND ASSIGNMENT OF ERROR

{¶22} "The trial court erred as a matter of law in concluding OHIO REV. CODE ANN. §2109.35 could not be used to challenge the final account when there was a fraud committed in valuing the assets of the estate."

{¶23} R.C. 2109.35 reads, in pertinent part:

{¶24} "The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:

{¶25} "(A) The order may be vacated for fraud, upon motion of any person affected by the order or upon the court's own order, if the motion is filed or order is made within one year after discovery of the existence of the fraud.

{¶26} "* * *

{¶27} "A motion to vacate an order settling an account shall set forth the items of the account with respect to which complaint is made and the reasons for complaining of those items. The person filing a motion to vacate an order settling an account or another person the court may designate shall cause notice of the hearing on the motion to be served upon all interested parties who may be adversely affected by an order of the court granting the motion.

{¶28} "An order settling an account shall not be vacated unless the court determines that there is good cause for doing so, and the burden of proving good cause shall be upon the complaining party."

{¶29} "* * * The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at

hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus. Fraud must be shown by clear and convincing evidence. *Mathe v. Fowler* (1983), 13 Ohio App.3d 273, 275, 469 N.E.2d 89.

**{¶30}** Appellant alleges fraud based on the accounting firm's reliance on the December 31 financial statement for the stock valuation. Appellant contends that the accounting firm intentionally omitted the scrap as an asset of the corporation in the December 31 financial statement in an effort to devalue the stock and defraud the estate.

**{¶31}** However, based on the record it appears that the trial court was correct that Appellant's fraud claim must fail. First, her argument ignores the fact that the March 31 financial statement (on which she premises her motion to vacate) like the December 31 financial statement, does not list the scrap as an asset. The note in the March 31 financial statement clearly states that inventory consists of the actual cost of scrap purchases on hand at the end of the year. The note explains that the scrap at issue is not listed as inventory or assigned a value because it is a by-product of prior or current dismantling projects, and no value is attributed to this scrap until it is sold.

**{¶32}** Second, Anness states in his uncontroverted affidavit that the exclusion of the scrap from the assets of the corporation is consistent with generally accepted accounting principles. Despite having the burden of proof on the motion to vacate, and the fact that the motion remained pending for over two and a half years because of the intervening appeal, Appellant did not offer any evidence to contradict Anness's affidavit regarding the appropriateness of the exclusion of the scrap's estimated value from the assets listed in the December 31 financial statement. If Anness' statement that the scrap was not listed as inventory pursuant to generally accepted accounting principles was not accurate, an opposing affidavit from another accountant should not take two years to procure. As the record stands, Appellant failed to establish that the omission of the scrap from the list of assets in the December 31 financial statement constitutes the concealment of a material fact.

**{¶33}** At oral argument, Appellant's counsel stated that we need look no further than Appellant's deposition testimony to establish the fraud perpetrated on the estate, but Appellant's counsel did not cite to any specific testimony. The following excerpt from Appellant's deposition represents all of the testimony she gave regarding the March 31 financial statement:

**{¶34}** "Q: I'm going to hand you now, Mrs. Ramun, Plaintiff's Exhibit 11 which is a document that you brought us today and that appears to be some financial reports for what corporation please?

**{¶35}** "A  Allied Erecting and Dismantling.

**{¶36}** "Q  Can you turn to page 8 of that particular document for me?

**{¶37}** "A  Yes.

**{¶38}** "Q  You see at the top of that page it says 'Note A' which is an explanation of some things that are set forth earlier in the financial statement.  Do you see at the bottom there where it talks about some inventory?

**{¶39}** "A  Scrap inventory?

**{¶40}** "Q  Yes, ma'am.

**{¶41}** "A  Yes.

**{¶42}** "Q  And I think it talks about $20,000,000 worth of inventory, correct?

**{¶43}** "A  Yes.

**{¶44}** "Q  If you recall, was that inventory around when your husband passed away?

**{¶45}** "A  Yes.  Oh, yes.  That was going to be his retirement.

**{¶46}** "Q  Okay.

**{¶47}** "A  He said – jokingly.

**{¶48}** "Q  Okay. If you know, is there a reason why that was not taken into account in valuing the stock of the corporation for the estate?

**{¶49}** "A  Probably to make it as low as it could be.

**{¶50}** "Q  Okay.  But in any event, it's your recollection that all that [sic] inventory was there at the time your husband passed away?

**{¶51}** "A  Oh, yes.  It come [sic] from U. S. Steel there on the jobs."  (Louise Ramun Depo., pp. 73-74.)

**{¶52}** Contrary to her counsel's claims, the foregoing testimony establishes several facts inconsistent with Appellant's assertion of fraud. First, the testimony shows that the March 31 financial statement was and had been in Appellant's possession, because she brought it with her to the deposition. She later testified that the March 31 financial statement was part of the estate file maintained by Attorney Fox, and that the file was given to her after Fox's retirement. (Louise Ramun Depo., pp. 82-83.) Attorney Fox was hired by Appellant, as executrix of the estate and was thus her agent. If, as she claims, this document spurred her to become aware of a material misrepresentation, it had long been in the possession of her or her agent. Her deposition testimony appears to establish, then, that there was no concealment of a material fact.

**{¶53}** Next, and perhaps more importantly, Appellant concedes in her deposition that she was aware of the existence of the scrap during the administration of the estate and that she knew that the scrap had considerable value, because her husband jokingly referred to it as his "retirement." She repeated this testimony later in her deposition and stated that John also referred to the scrap as his "retirement." (Louise Ramun Depo., pp. 100-101.) Appellant further testified that she was aware that John reluctantly sold the scrap in order to keep the business afloat during the last few years that the U.S. Steel litigation was pending. (Louise Ramun Depo., pp. 99-100.) Therefore, the evidence shows that she did know that the scrap was valuable during her husband's lifetime and hence, during the preparation of his estate. If, as she claims, this valuable asset was deliberately omitted from the stock

valuation she filed with the court, she was in the best position to question this omission at the time, as she was clearly aware of the asset.

{¶54} In this appeal, Appellant characterizes herself as the unwitting victim of her son John, Mr. Anness, and Attorney Fox during the administration of the estate. She claims she allowed John to hire both Mr. Anness and Attorney Fox, even though she was charged with administering the estate. However, without evidence of the actual concealment of a material fact, Appellant's insistence that she blindly relied on her son and her advisors may be evidence of her failure to fulfill her fiduciary duties to the estate, but it is not evidence of a fraud committed against the estate.

{¶55} Appellant's claim that she placed most of her reliance on John during the estate process is also at odds with the testimony offered at her deposition. She testified that her husband, the decedent, intended that his sons would own equal parts of the corporation after their parents' deaths. His intention was manifested in both his will and her own, in which Michael was to inherit the decedent's shares of the corporation after the passing of both of his parents. (Louise Ramun Depo., p. 57.) Since John owned the other 50% of the stock, the couple planned to pass their half to Michael because Louise stated that the decedent did not trust John to "treat Michael right," and that the decedent did not want John to own the entire corporation. (Louise Ramun Depo., pp. 24-25.) Therefore, her testimony that she so trusted John that she blindly followed John's advice in settling her husband's estate appears to lack credibility.

**{¶56}** "[I]n the absence of a suitable actual market, valuation of stock in a closely held corporation is complex, and the testimony of an expert is necessary to determine the fair cash values of shares of stock. The fair cash value is defined as the amount which a willing seller, under no compulsion to sell, would be willing to accept and a willing buyer, under no compulsion to purchase would be willing to pay." (Internal citations omitted.) *Loux v. Loux* (October 8, 1987), 8th Dist. Nos. 52520, 53438, *4.

**{¶57}** Here, Appellant has not offered any evidence to demonstrate that the valuation at issue did not reflect the fair cash value of the stock. She alleges that the valuation should have included the estimated value of the disputed scrap but has produced no evidence to show that the scrap was fraudulently excluded from the December 31 financial statement used to value the stock and that she, herself, filed to close the estate. Both the March 31 financial statement she alleges exposes some fraud and the December 31 statement she filed on behalf of the estate exclude the scrap as an asset in the inventory. The March 31 document, as well as the affidavit of Mr. Anness both address the exclusion by stating that it had no value until its actual sale, according to accepted practice in the profession. Appellant merely alleges that this is untrue. She has provided absolutely no evidence of any nature to support her allegation. Consequently, in her attempt to vacate the final distribution of the estate she did not establish fraud by clear and convincing evidence. The evidence in the record supports the conclusion that Appellant was not only aware of the scrap and its substantial value before her husband's death and at the time of

closing the estate, she was also aware that John later sold the scrap to keep the business afloat during the final years of the U.S. Steel lawsuit. Ample time existed between filing of her motion and the trial court's decision for her to have procured some evidence that this valuable asset was required to be included in the valuation of the company's stock: a simple affidavit countering that provided by Mr. Anness would have sufficed. No such evidence was provided and all of the evidence of record indicates that Appellant was aware this alleged asset existed. She was certainly aware it was not included in the inventory of the company because she caused the inventory to be prepared and filed it in the 1988 estate. Therefore, at a minimum, the trial court did not err when it rejected her claim that she discovered the alleged fraud within a year of filing the 2005 motion to vacate. Accordingly, Appellant's second assignment of error is overruled.

## FIRST ASSIGNMENT OF ERROR

{¶58} "The trial court erred in not conducting a hearing on the motion to vacate the final account, denying Appellant meaningful access to the courts of this State in violation of OHIO CONST., art. I, §16."

{¶59} Appellant argues that merely by raising allegations of fraud, she has provided enough of a reason to be statutorily entitled to an oral hearing on her claims. She alleges that without such a hearing, she cannot procure the requisite evidence she needs to prevail in this case. Appellant contends that she "called into question the final accounting [and] requested an opportunity to conduct discovery so that she could present proof that two separate financial statements were prepared

within months of each other in order to keep a significant corporate assets [sic] from being disclosed in the probate court." (Appellant's Brf., p. 6.) She argues that her due process rights were violated when the trial court ruled on her motion without conducting such a hearing.

**{¶60}** Appellant's argument is predicated on her assumption that she has, in fact, called into question the final accounting. However, Appellant did not produce any evidence to support her allegations that a fraud was perpetrated in this case, despite the fact that she was provided with the opportunity to offer evidence in support of her motion prior to the non-oral hearing in this matter. Because she seeks to proceed on mere allegations, the trial court did not err in denying the motion to vacate without first conducting an (oral) evidentiary hearing.

**{¶61}** At oral argument in this Court, both parties rested their due process arguments on the Fifth District's opinion in *In re Sluss* (September 10, 2001), 5th Dist. No. 2001CA00024. In that case, the probate court granted a motion to vacate an entry approving and settling the estate's partial account, based on evidence in the record that guardianship and attorney fees were wrongfully paid from the estate. Neither party requested an evidentiary hearing.

**{¶62}** The appellants in *Sluss* argued on appeal that the trial court abused its discretion when it ruled on the motion without first conducting an evidentiary hearing. The Fifth District concluded that no hearing was required because no hearing was requested and "[t]he filings spoke for themselves and could not have been altered by any amount of testimony." Id. at *3.

**{¶63}** Appellant argues that *Sluss* stands for the rule that an evidentiary hearing must be held if either of the parties requests a hearing. Appellee argues that Appellant was heard for the purposes of the statute, when the probate court permitted the parties to submit written evidence in support of their respective arguments. Appellee further argues that an evidentiary hearing is not required where there is no evidence supporting the mere allegation of fraud. The evidence of fraud in *Sluss* was on the record. Therefore, the facts in *Sluss* are distinguishable from the facts in this case.

**{¶64}** Appellant was not denied due process in this case. Rather than dismissing the motion based on Appellant's failure to plead fraud with particularity, as it could have done, the probate court set a non-oral hearing in this matter to consider Appellant's fraud claim. Despite the fact that the probate court invited the parties to submit "any additional written statements of reasons in support or opposition on or before said hearing," (5/1/08 J.E., p. 1), Appellant did not offer any written evidence to contradict the Anness affidavit. Without a competing affidavit from another accountant attesting to the fact that exclusion of the scrap from the December 31 financial statement was contrary to generally accepted accounting principles, the unrebutted evidence before the trial court established that Anness's reliance on the December 31 financial statement in valuing the stock did not constitute a fraud on the estate.

**{¶65}** Generally a "movant has no automatic right to a hearing on a motion for relief from judgment." *In the Matter of the Estate of Mary A. Kirkland,* 2d. Dist. 2008-

CA-57, 2009-Ohio-3765, ¶17, citing *Hrabak v. Collins* (1995), 108 Ohio App.3d 117, 121, 670 N.E.2d 281 (applying Civ.R. 60(b) law to R.C. 2109.35 motion to vacate). "It is an abuse of discretion for a trial court to overrule a Civ.R. 60(B) motion for relief from judgment without first holding an evidentiary hearing only if the motion or supportive affidavits contain allegations of operative facts which would warrant relief under Civ.R. 60(B)." (Emphasis omitted.) *Kirkland*, ¶17, citing *Boster v. C & M Serv., Inc.* (1994), 93 Ohio App.3d 523, 526, 639 N.E.2d 136.

**{¶66}** Appellant was given an opportunity to submit evidence, but relied instead on bare allegations of fraud to support her motion. Consequently, the probate court did not err in resolving the motion without an oral evidentiary hearing.

**{¶67}** Accordingly, both of Appellant's assignments of error are overruled and the judgment of the probate court is affirmed.

Donofrio, J., concurs.

Vukovich, P.J., concurs.